**John FORAN, Petitioner,**

v.

**Hon. Paul METZ, as Superintendent of Great Meadow Correctional Facility, Respondent.**

**No. 78 Civ. 81 (JMC).**

United States District Court, S. D. New York.

Jan. 9, 1979.

---

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City (Robert J. Schack, Asst. Atty. Gen., New York City, of counsel), for respondent.

## MEMORANDUM DECISION

CANNELLA, District Judge.

Petition for a writ of habeas corpus is denied. 28 U.S.C. § 2254.

Petitioner is presently confined at Auburn Correctional Facility pursuant to a judgment of the New York County Supreme Court convicting him, after a jury trial, of attempted murder. On February 18, 1975, petitioner was sentenced to a term of imprisonment of seven to twenty-one years. The judgment of conviction was affirmed, without opinion, by the Appellate Division of the New York Supreme Court and leave to appeal to the New York Court of Appeals was denied.

Petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, claiming that his state court trial was unconstitutional because:

1. The Court refused to instruct the jury that a reasonable doubt of the guilt of petitioner might result from the lack of evidence against him, in violation of the Fourteenth Amendment.

2. The use of evidence against petitioner seized from the vehicle in which he was a passenger after he was illegally detained by the police for two hours, without charges or probable cause, violated his Constitutional rights secured by the Fourth Amendment.

3. A twenty-five month delay from his arrest in bringing petitioner to trial, as well as delays in excess of 180 days and 120 days, respectively, from his demand to be brought to trial and from his production in the jurisdiction from the institution where he was serving a Federal sentence, deprived petitioner of his Constitutional right to a speedy trial secured by the Sixth Amendment.

Robert E. Green, Forest Hills, N. Y., for petitioner.

Petition for a Writ of Habeas Corpus, at 14. The facts pertinent to each of these claims are incorporated into the discussion below.

*Jury Instructions*

■ To prevail on his claim that the jury instructions in the state court trial invalidated his conviction, petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the [petitioner] by the Fourteenth Amendment." *Cupp v.* *Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

In this regard, the trial transcript[1] discloses that following the judge's charge, petitioner took exception to that portion of the instructions defining "reasonable doubt." Petitioner requested that the jury be instructed "that a reasonable doubt may arise from the evidence presented or from the lack of evidence presented by the Prosecution."[2] The trial court denied this request but did charge further on the definition of reasonable doubt.[3]

1. Following the filing of the petition, the Court advised counsel for petitioner that it would require transcripts of the state court suppression hearing and other pretrial proceedings. After several unsuccessful attempts to obtain the transcripts, from counsel for the codefendants in the state court trial, petitioner's attorney subpoenaed the transcripts from the Clerk of the New York County Supreme Court. Thereafter, in August, 1978, the minutes were delivered to the Court.

2. Transcript of Proceedings, at 1384, *People v. Mooney,* No. 6387/72 (N.Y. County Sup.Ct., Oct. 17—Nov. 6, 1974). At the request of counsel for both parties, the various transcripts referred to have not been docketed as exhibits in order to avoid the expense of duplication. Upon the filing of this Decision the transcripts shall be returned to counsel, on condition that these be made available in any subsequent court proceedings [hereinafter, specific pages of the trial transcript will be cited as "Tr. ——."].

3. Tr. 1390–91. The trial court initially instructed the jury on the issue of reasonable doubt as follows:

In all criminal cases including this one the Defendants are presumed to be innocent of the charges made against them. This presumption continues throughout the Trial, throughout the testimony, throughout summations and even during my instructions to you. It continues as a presumption unless and until you, by your verdict of guilty, have decided that the presumption has been overcome by the evidence or until you decide by your verdict of not guilty that the presumption has become an established fact. The burden of overcoming the presumption is not on the Defendants but it is on the Prosecution.

In order for the Prosecution to overcome this presumption, the charges against the Defendants must be proved in a manner which we call beyond a reasonable doubt. A reasonable doubt is defined as an actual doubt you are conscious of after going over in your minds the entire case, giving consideration to all of the testimony and exhibits and to every part of the evidence. Guilt does not have to be established as a mathematical certainty in order to be established beyond a reasonable doubt.

Reasonable doubt is a doubt which arises from the evidence for some good reason. It is not merely a vague or imaginary doubt. It is not a mere whim, not a guess, not surmise, neither is a reasonable doubt a subterfuge to which a juror might resort in order to avoid doing a disagreeable duty.

If on a consideration of the entire case with all of the evidence, including the testimony and exhibits together with such inferences, such conclusions as fair minded and intelligent men and women have the right to draw from the facts which have been established from the evidence and which you believe, if you have such a belief in the Defendant's guilt of any offense charged against the Defendant, that a prudent and reasonable person would feel it safe to act on that belief on matters of the highest concern to himself, then you may safely say that the Prosecution's case with respect to that offense has been established beyond a reasonable doubt. However, if you have a reasonable doubt, as I have defined it, as to whether the Defendants' guilt has been satisfactorily shown as to any offense charged against that Defendant, then that Defendant is entitled to a verdict of not guilty as to that offense.

Tr. 1332–34. Following the exceptions, the judge supplemented his charge, in part, as follows:

Ladies and gentlemen, if you do not find any fact beyond a reasonable doubt, then the Defendant is entitled to the benefit of that doubt. There are some facts you may find beyond a reasonable doubt and some you may not find beyond a reasonable doubt. If the facts that you find beyond a reasonable doubt lead to a conclusion of guilt, then that conclusion has been reached beyond a rea-

■ In *United States v. Caruso*, 358 F.2d 184 (2d Cir.), *cert. denied*, 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966), the United States Court of Appeals for the Second Circuit confronted the precise alleged error that petitioner asserts in support of his request for a writ of habeas corpus. In *Caruso*, on direct appeal from a federal conviction, the late Judge Anderson rejected the argument as follows:

> The remaining question raised on this appeal concerns the refusal of the trial judge to charge that reasonable doubt is a doubt which, in the exercise of reason, may arise not only from a consideration of all the evidence in the case but also from a lack of evidence. It would not have been error for the court to charge as requested, but this court has not made it a requirement that the trial judge, in charging on reasonable doubt, include the words "from a lack of evidence" or "from a want of evidence." *United States v. Rinaldi*, 301 F.2d 576, 578 (2d Cir. 1962). The charge as a whole correctly conveyed to the jury the concept of reasonable doubt.

*Id.* at 186–87. Similarly, in the instant case, the Court concludes that there was no error in the state court jury instructions on the concept of reasonable doubt.

### Fourth Amendment

■ On September 21, 1972, at 5:00 a. m., the vehicle in which petitioner was a passenger was stopped by several police cars in Central Park. At the time, petitioner was seated in the front passenger's seat, with codefendant Cumella in the driver's seat, and codefendant Mooney in the rear passenger seat. The police conducted an on-the-spot search of the car, but upon discovering no evidence, brought the car and its three occupants to the local police station for further investigation. Approximately two hours later, they again searched the car and this time found a spent .38 cartridge shell on the floor just behind the driver's seat. The police then arrested the petitioner and his two companions. Sometime thereafter, they learned that the car was registered to and owned by codefendant Cumella's wife.

Pursuant to New York law, Justice Harold Birns presided over a three-day pretrial hearing on the motions by petitioner and his codefendants to suppress the cartridge shell found in the car. Movants claimed that the evidence had been seized without a warrant and without probable cause, in violation of the fourth amendment. On September 3, 1974, Justice Birns denied the motion to suppress. At the trial, before Justice Evans, the cartridge shell was received in evidence over petitioner's objection. Tr. 958–59. On appeal, petitioner renewed this objection. His brief to the Appellate Division contains nineteen pages of argument that the search of the car violated the fourth amendment. *See* Brief for Appellant Foran at 3–5, 24–40, *People v. Mooney*, 53 A.D.2d 1065, 385 N.Y.S.2d 694 (1st Dep't 1976).

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court sharply curtailed federal habeas review of state convictions by stating:

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 482, 96 S.Ct. at 3046 (footnote omitted). Petitioner argues that *Stone* does not control the outcome here because his opportunity to litigate his fourth amendment claim in the state courts "cannot be classed as 'fair' where the Court makes a finding that the police were justified in detaining suspects and their vehicle, to await the coming of day light in order to conduct a fruitful search." Petitioner's Reply Memoran-

sonable doubt. It is not necessary that every individual fact be proved beyond a reasonable doubt. But sufficient facts to establish the guilt of a Defendant beyond a reasonable doubt in the entire case must be proved. Tr. 1395–96.

dum of Law, at 5.[4] What petitioner, in effect, suggests is that under *Stone,* a federal court may characterize state court procedures as "unfair," and hence review the fourth amendment claim, where the outcome is erroneous. The Second Circuit has emphatically rejected this interpretation: "we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts." *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). According to the court in *Gates,* the merits of a habeas petitioner's fourth amendment claim are irrelevant if he had an opportunity to litigate it fully and fairly. The Court finds that Foran was given that opportunity. Six police officers testified at the three-day suppression hearing, the transcript of which comprises 417 pages. Petitioner renewed his objections at trial and on appeal and cannot complain that he was in any way precluded from utilizing state court procedures. Under *Stone* and *Gates,* therefore, the Court may not review the merits of petitioner's fourth amendment claims.

*Speedy Trial*

On September 21, 1972, petitioner was arrested, arraigned on a complaint and admitted to bail. The grand jury proceedings initially were delayed because the complaining witness was still in the hospital. The case was presented to the Grand Jury in October 1972, but no bill was filed. The case was presented to the Grand Jury again and, on March 30, 1973, petitioner and his codefendants were indicted for attempted murder and assault.

On April 11, 1973, petitioner was arraigned on the indictment and entered a plea of not guilty. On May 11, 1973, petitioner moved (1) to dismiss the indictment, (2) for a bill of particulars and other discovery, and (3) for inspection of the grand

jury minutes. On June 29, 1973, the discovery aspects of petitioner's motion were granted in part by Justice Sutton and the prosecutor was given thirty days to comply. On July 9, 1973, Justice Sutton denied petitioner's motion to inspect the grand jury minutes and dismiss the indictment.

Meanwhile, petitioner was indicted on unrelated federal charges. These proceedings culminated on September 12, 1973, when petitioner was sentenced to a seven-year term of imprisonment, following his conviction on a plea of guilty to extortion in the United States District Court for the Eastern District of New York. Thereupon, petitioner was remanded to the federal correctional facility in Lewisburg, Pennsylvania, for execution of his sentence. Petition for a Writ of Habeas Corpus, at 5.

That same day, September 12, 1973, petitioner's state court case appeared on the calendar. Understandably, petitioner did not appear. The prosecutor informed the court of petitioner's federal sentence and that the People would attempt to secure petitioner's presence for trial by a writ of habeas corpus ad prosequendum. *See* N.Y. Crim.Proc.Law § 580.30 (McKinney 1971). In December 1973, federal authorities informed the state prosecutor that they would not honor the writ, allegedly because of overcrowding at the New York City federal detention facility. The prosecutor informed the state court of this situation on January 16, 1974, and indicated that he would seek production of the petitioner pursuant to the Interstate Agreement on Detainers. N.Y.Crim.Proc.Law § 580.20 (McKinney 1971); 18 U.S.C. App. (Supp. 1978).

On January 22, 1974, according to an endorsement on the state court docket sheet, Justice Martinis took the following action: "Defendant incarcerated in U.S. Penitentiary, Lewisburg, Pa. Bail is Exon-

---

4. In *Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court held that an automobile passenger *qua* passenger has no legitimate expectation of privacy in the area under the seat of a car. Consequently,

in that case, a warrantless seizure of incriminating evidence from this area did not violate the petitioners' fourth amendment rights. *Id.* at ——, 99 S.Ct. 421.

erated and Bench Warrant lodged." On January 24, 1974, federal authorities received the prosecutor's request, and, on February 12, 1974, advised him that petitioner was available for return to New York. On or about March 19, 1974, state agents brought petitioner to New York City.

From March 21, 1974, to April 21, 1974, the prosecutor assigned to petitioner's case, was engaged in a murder trial on an unrelated indictment filed three months before petitioner's. *See* Respondent's Brief, at 49, *People v. Mooney*, 53 A.D.2d 1065, 385 N.Y. S.2d 694 (1st Dep't 1976) [hereinafter cited as "Respondent's Brief"].

According to petitioner, between March 1974 and June 1974: "Case appeared on calendar numerous times. People never ready. Defense consistently prepared to proceed." Brief for Appellant Foran, at 50, *People v. Mooney,* 53 A.D.2d 1065, 385 N.Y. S.2d 694 (1st Dep't 1976). On May 2, 1974, a new attorney was substituted for one of petitioner's codefendants. On May 3, 1974, this attorney made certain discovery motions which were denied on May 30, 1974. On June 14, 1974, and June 24, 1974, the prosecutor was granted adjournments because of the unavailability of police witnesses who were on vacation. Respondent's Brief, at 50.

On June 13, 1974, petitioner filed a motion, returnable June 24, 1974, seeking to dismiss the indictment for denial of a speedy trial, presumably pursuant to state law. Petitioner's Memorandum of Law, at 6 (Jan. 9, 1978); *see* N.Y.Crim.Proc.Law § 30.20 (McKinney Supp.1978–79). On the return date, one of petitioner's codefendants was granted leave to join in the motion and the prosecutor was granted an adjournment until July 8, 1974 to serve responding papers. Transcript of Proceedings, at 2, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. June 24, 1974) (Culkin, J.). On July 8, 1974, the prosecutor filed his response to petitioner's motion and the court adjourned the motion, over petitioner's objection, to July 15, 1974, for decision. Transcript of Proceedings, at 2, 7, *People v. Foran,* No.

6387/72 (N.Y.County Sup.Ct. July 8, 1974) (Culkin, J.). On July 17, 1974, Justice Culkin denied the motion to dismiss with leave to renew if petitioner was not brought to trial by September 1974. Justice Culkin held that petitioner had not sought a speedy adjudication; that he had acquiesced in much of the delay by failing to object to adjournments; that the prosecutor had acted reasonably in attempting to obtain petitioner from the federal authorities; and that time required to answer and decide petitioner's motions for discovery and dismissal should be excluded from the speedy trial time limitations. Respondent's Brief, at 50–51.

On July 16, 1974, petitioner filed his third motion to dismiss, returnable July 26, 1974, this time alleging a violation of the Interstate Agreement on Detainers. Petitioner's Memorandum of Law, at 7; Respondent's Brief, at 51. On the return date, the court adjourned the motion, over petitioner's objection, to August 1, 1974, since the prosecutor assigned to the case was on vacation and had not filed a response. Transcript of Proceedings, at 2–3, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. July 26, 1974) (Culkin, J.). On August 1, 1974, the prosecutor had not yet returned from vacation and the court granted an adjournment to August 8, 1974 for the prosecutor to serve his responding papers. Transcript of Proceedings, at 4–7, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. August 1, 1974) (Melia, J.). On August 5, 1974, the prosecutor appeared and announced that he had just returned from a three-week vacation but, subject to the decision on the motion, the People were ready for trial. Transcript of Proceedings, at 2–6, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. August 5, 1974) (Melia, J.). On August 8, 1974, the prosecutor filed his opposing papers and Justice Melia heard argument on the motion. Following the argument, the court denied the motion from the bench. Justice Melia observed that under the Interstate Agreement on Detainers, the court was empowered to "grant any necessary or reasonable continuance." N.Y.Crim. Proc.Law § 580.20 (Art. IV(c)) (McKinney

1971). The court found that the continuances granted during the time the prosecutor was engaged in another trial were necessary and reasonable and that the District Attorney should not have been required to assign another assistant to the case. Further, the court found that the time during which the codefendant's discovery motion was pending (May 3, 1974 to May 30, 1974) was a necessary and reasonable continuance and did not warrant a severance of petitioner's trial; that the adjournments granted because of the unavailability of prosecution witnesses were necessary and reasonable; and that the adjournments granted because of the prosecutor's vacation were necessary and reasonable. The court, therefore, found that the Interstate Agreement on Detainers had not been violated and, accordingly, denied the motion to dismiss. Transcript of Proceedings, at 27–29, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. August 8, 1974). Thereupon, counsel for a codefendant represented to the court that he was scheduled to commence a trial of a nineteen-count federal indictment, in the United States District Court for the Southern District of New York, on August 20, 1974. He further stated that the defendants and witnesses in that case were travelling to the trial from Florida and that he expected the trial would consume more than thirteen actual trial days. For these reasons, counsel for petitioner's codefendant requested an adjournment until the conclusion of the federal trial. The court, noting the possibility of prejudice to petitioner and the other codefendant, denied the application and marked petitioner's case ready for trial. Transcript of Proceedings, at 30–36, *People v. Foran,* No. 6387/72 (N.Y.County Sup.Ct. August 8, 1974).

Shortly thereafter, petitioner and his two codefendants moved for a hearing on their motions to suppress certain physical evidence and statements. Justice Birns presided over the three-day suppression hearing, discussed earlier. Transcript of Proceedings, *People v. Mooney,* No. 6387/72 (N.Y. County Sup.Ct. August 12–14, 1974). On September 3, 1974, the motion to suppress was denied. In an affidavit dated September 16, 1974, counsel for one of petitioner's codefendants informed the court that he was engaged in a trial in federal court and asked that the case be adjourned. Respondent's Brief, at 52.

On October 16, 1974, petitioner filed his fourth motion to dismiss the indictment, this one alleging a failure to prosecute. Petitioner's trial commenced the following day, October 17, 1974. The court reserved decision on petitioner's pending motion, Tr. 37–39, and denied it at the conclusion of the trial. Tr. 1417.

■ Petitioner now comes to this Court seeking a writ of habeas corpus on the ground that the pretrial delays in state court denied him his sixth amendment right to a speedy trial. The Supreme Court has identified four factors that a court should consider in passing on such claims: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). In the instant case, the total delay between arrest and trial was less than twenty-five months. The time between arraignment on the indictment and commencement of the trial was eighteen months. The Court does not find these delays to be presumptively prejudicial. *See United States v. Tanu,* 589 F.2d 82 (2d Cir. 1978) (federal trial commenced more than four years after arrest, and more than twenty months after dismissal of state indictment for the same transaction, did not violate sixth amendment).

As to the reason for the delay, the Court finds no evidence of "[a] deliberate attempt to delay the trial in order to hamper the defense," *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, on the part of the state court prosecutor. Rather, the delay is attributable to time required to decide petitioner's pretrial motions, the difficulty in securing petitioner's presence from federal authorities, actions of petitioner's codefendants, the prosecutor's engagement in another criminal trial, and the prosecutor's summer vacation.

Although petitioner maintains that he sought a speedy adjudication of the state court charges as early as September 1973, Justice Culkin found otherwise. In this regard, the Court notes that petitioner's first motion to dismiss for failure to afford him a speedy trial was not made until June 13, 1974, some twenty-two months after his arrest. The prosecutor answered ready for trial on August 5, less than two months later, and the trial actually commenced on October 17, 1974.

Finally, in his submission to this Court, petitioner makes no claim whatsoever of any prejudice occasioned by the delay. At his state court trial petitioner called no witnesses. Moreover, petitioner was continued on bail following his arraignment on the indictment. Although he was in state custody from March 20, 1974, this was a result of his federal sentence and not the state court indictment.

Upon consideration of the record of petitioner's state court trial, the Court finds no basis for invalidating petitioner's conviction and sentence on sixth amendment grounds.

*Interstate Agreement on Detainers*

The threshold issue, with regard to petitioner's claim based on the Interstate Agreement on Detainers, concerns the appropriate scope of review. The United States Court of Appeals for the Second Circuit has held that a violation of the Interstate Agreement on Detainers, is not a basis for habeas corpus relief under 28 U.S.C. § 2255. *Edwards v. United States,* 564 F.2d 652 (1977); *see Williams v. Maryland,* 445 F.Supp. 1216, 1220 (D.Md.1978). And since "there can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254, the general federal habeas corpus statute," *Davis v. United States,* 417 U.S. 333, 344, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974), there is no reason for a different result under section 2254. On the other hand, the United States Court of Appeals for the Seventh Circuit has held that

an allegation of a state prisoner, that he has been denied rights under the [Inter-

state Agreement on Detainers] is an allegation that he is in custody in violation of a law of the United States, and the requirement for federal habeas corpus jurisdiction under 28 U.S.C. § 2254(a) is met. *Echevarria v. Bell,* 579 F.2d 1022, 1025 (1978) (footnote omitted). The United States Court of Appeals for the Sixth Circuit, taking yet another approach, has implied that something more than a bare violation of the time limitations of the Interstate Agreement on Detainers would have to be shown before a federal habeas corpus court could invalidate a state conviction. *Stroble v. Egeler,* 547 F.2d 339 (6th Cir. 1977) (per curiam). In *Stroble,* the court remanded the denial of a writ of habeas corpus for an evidentiary hearing to determine whether the continuances granted in the state court trial "were on the basis of good cause shown after notification and with [petitioner] and counsel present." 547 F.2d at 341. The Sixth Circuit further instructed the district court that,

[i]f there was failure to observe one or more of these provisions, the court should then determine whether prejudice to the [petitioner] resulted therefrom, and if not, whether nonprejudicial violation of the [Interstate Agreement on Detainers] nonetheless mandates vitiation of the trial and sentence and dismissal of the indictment.

*Id.*

This Court is of the opinion that a violation of the time limitations, contained in Articles III(a) and IV(c) of the Interstate Agreement on Detainers, provides no independent basis for the grant of a writ of habeas corpus under 28 U.S.C. § 2254. Rather, such claims should be a factor to consider in determining whether a petitioner's sixth amendment speedy trial rights were violated. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Nevertheless, the dismissal of petitioner's claims need not be based solely on that ground. Even upon construing this developing area of the law most favorably to the petitioner, and reviewing his claims de novo, the Court concludes that the time

limitations of the Interstate Agreement on Detainers were not violated.

It is now clear that a writ of habeas corpus ad prosequendum is not a "detainer" for purposes of the Interstate Agreement on Detainers. *People v. Squitieri*, 91 Misc.2d 290, 397 N.Y.S.2d 888 (N.Y.County Sup.Ct.1977); *cf. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Accordingly, the time limitations of the Interstate Agreement on Detainers did not begin to run until the bench warrant issued by Justice Martinis was lodged as a detainer against petitioner with the warden of the federal penitentiary in Lewisburg on January 24, 1974.

The 120-day limit of Article IV(c) of the Agreement, rather than the 180-day limit of Article III(a), is applicable here since the petitioner was actually produced in New York City on March 19, 1974, less than sixty days after the issuance of the bench warrant. Accordingly, if there had been no necessary or reasonable continuances, petitioner's trial should have begun by July 17, 1974. Since his trial did not commence until October 17, 1974, ninety-two days later, the question for the Court is whether the full ninety-two days can be attributed to necessary and reasonable continuances that were granted for good cause shown in open court, the petitioner or his counsel being present. *See* N.Y.Crim. Proc.Law § 580.20 (Art. IV(c)) (McKinney 1971).

Although the thirty days (March 21, 1974 to April 21, 1974) that the prosecutor was engaged in another criminal trial would be good cause for a continuance, nothing in the record suggests that the prosecutor sought a continuance on this basis. Accordingly, this period cannot be excluded from the time limitations of the Interstate Agreement on Detainers.

However, the twenty-eight days (May 3, 1974 to May 30, 1974) during which petitioner's codefendant's discovery motion was pending may be excluded. Petitioner had notice of the motion and made no objection to the delay it would engender.

The ten-day adjournment, granted to the prosecutor (June 14, 1974 to June 24, 1974) was based upon the unavailability of police witnesses and was granted in open court. From June 24, 1974 through September 3, 1974 (seventy-one days), petitioner's pretrial motions were made and decided. Two motions sought dismissal of the indictment for denial of a speedy trial and the third, made nearly two years after arrest, sought suppression of physical evidence. Thereafter, counsel for one of petitioner's codefendants sought adjournments because of other engagements.

Petitioner argues that the time required to decide his three motions to dismiss for delay should not be excluded from any computation of time limitations. The Court disagrees. Where a criminal defendant seeks an adjudication on an issue that would preclude a trial, he cannot thereafter argue that the time required to decide his claim should be held against the state for purposes of computing limitations of time. In the instant case, petitioner made three pretrial motions to dismiss the indictment, each alleging a delay in prosecution. The Court declines to hold that state courts must decide such motions immediately upon filing on pain of dismissal of the indictment for delay.

Petitioner also argues that the delay caused by the pretrial motions of one of his codefendants and by the engagement of counsel for the other codefendant should not be attributed to him. In further support of this argument he claims that his trial should have been severed from that of one of his codefendants "for substantive reasons." Petitioner's Memorandum of Law, at 33. However, petitioner made no claim regarding a severance in his brief to the Appellate Division nor did he press any conflict with his codefendants in the pretrial motions filed in the trial court. Accordingly, the Court rejects this argument as well.

Finally, petitioner points to the prosecutor's three-week summer vacation and argues that this was neither a necessary nor

reasonable ground for continuance. Again the Court disagrees. As Justice Melia pointed out, in denying petitioner's third motion to dismiss, "[i]f the district attorney could not go on vacation because he had a case to try, he would never get one because he always has a case to try." Transcript of Proceedings, at 29, *People v. Foran*, No. 6387/72 (N.Y.County Sup.Ct. August 8, 1974). Other judges, in the analogous context of the federal Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, agree that reasonable vacation periods for counsel should be excluded from the applicable time limitations. *See* Second Circuit Judicial Council Speedy Trial Coordinating Committee, Proposed Guidelines Under the Speedy Trial Act, at 38 (Nov. 20, 1978). Moreover, in the instant case, the prosecutor answered ready for trial on August 5, 1974, only nineteen days after the limitations of the Interstate Agreement on Detainers would have expired, had there been no continuances.

In sum, at least 109 days of delay are directly attributable to motion practice by petitioner and his codefendants, and the unavailability of police witnesses. Thus, the fact that petitioner's trial did not commence until ninety-two days after the otherwise applicable limitation of the Interstate Agreement on Detainers, does not make out a violation of that statute.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. 28 U.S.C. § 2254.

SO ORDERED.