Jimmy Tyrone **WILLIAMS**, Petitioner,

v.

Stephen **DALSHEIM**, Superintendent, Ossining Correctional Facility, Richard Hongisto, Acting Commissioner, New York State Department of Correctional Services, Respondents.

No. 78 C 1723.

United States District Court,
E. D. New York.

June 25, 1979.

Matthew Muraskin, Legal Aid Society of Nassau County, Mineola, N. Y., for petitioner by Michael J. Obus, Leslie P. Rudman, Mineola, N. Y.

Denis Dillon, Dist. Atty., Nassau County, Mineola, N. Y., for respondents by William C. Donnino, Asst. Dist. Atty., Mineola, N. Y., Bruce E. Whitney, Asst. Dist. Atty., Kew Gardens, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner, a State prisoner, is currently serving indeterminate terms of imprisonment with a maximum of 25 years which were imposed following his conviction by jury verdict of robbery in the first degree and grand larceny in the second degree on February 10, 1975. Upon appeal to the Appellate Division of the Supreme Court, Second Department, the case was remanded to the trial court to determine whether pre-arraignment or post-indictment delay was caused by the District Attorney. 54 A.D.2d 723, 387 N.Y.S.2d 400 (2d Dept. 1976). After a hearing in the trial court, the Appellate Division unanimously affirmed the judgments of conviction, 56 A.D.2d 904, 392 N.Y.S.2d 845 (2d Dept. 1977), and leave to appeal to the Court of Appeals was denied. 42 N.Y.2d 890, 397 N.Y.S.2d 1037, 366 N.E.2d 891 (1977).

Challenging his State convictions on three grounds, petitioner has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that the delay between the issuance of an arrest warrant and the commencement of his trial violated his Sixth Amendment right to a speedy trial; that the jury panel violated his Sixth and Fourteenth Amendment rights to be tried by a jury composed of a fair-cross section of the community; and that the State's failure to bring him to trial within 120 days of his arrival in New York under the terms of the Interstate Agreement on Detainers, 18 U.S. C.App. (the "IAD"), was contrary to provisions of the statute. The court finds none of the grounds asserted has merit and hence the petition is denied.

### IAD Claim

According to the undisputed facts, petitioner was produced from federal custody and brought to New York for prosecution pursuant to a previously filed detainer warrant and a subsequent request for temporary custody under the provisions of the IAD on March 28, 1974. On the following day, petitioner was arraigned and the matter was placed on a conference calendar on April 22, 1974. Petitioner's counsel stated at the conference that his client did not wish to plea bargain and wanted to be tried. The case was marked "Ready and Passed" for trial. On May 14th, the case was referred to another judge, and on June 20, 1974, the matter appeared on the trial calendar and was marked ready and passed to September 16, 1974. Thus, the facts disclose that on the 16th of September petitioner had remained in the State 172 days after his arrival without having been tried and appears to have stated a violation of the provisions of the IAD.

The primary purpose of the Interstate Agreement on Detainers is to provide a mechanism for the orderly and expeditious disposition of criminal charges pending against a prisoner held in one jurisdiction by authorities in another. The rationale for the IAD has been thoroughly explored and, by now, is so familiar that it need not be restated. For the IAD's history and purposes, see *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). It suffices to note that the IAD seeks fundamentally to protect a prisoner's rehabilitative opportunities and expectations and does so by imposition of strict timing requirements.

Article IV(c) provides that:

"In respect to any proceeding made possible by this article [providing for tempo-

rary custody of a prisoner by request of appropriate authorities], trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

It is the provisions of this article that are alleged to have been violated, and it is the sanction of dismissal of the indictment with prejudice that petitioner seeks as a remedy. See Article IV(e).

■ Respondents raise numerous objections to petitioner's claim. First, they question the jurisdiction of the court under 28 U.S.C. § 2254 to hear a claim alleging a violation of the IAD. The argument is presumably that the IAD is not a law of the United States for purposes of § 2254. Although the Court of Appeals for this circuit has not apparently addressed the question, the courts that have dealt with the issue have uniformly decided that a claim raised under the IAD is cognizable under § 2254, at least where the United States is a sending or receiving jurisdiction. See, e. g., *Echevarria v. Bell*, 579 F.2d 1022, 1024–25 (7 Cir. 1978); *Williams v. State of Md.*, 445 F.Supp. 1216, 1219 (D.Md.1978); *Stroble v. Egeler*, 408 F.Supp. 630, 633–34 (E.D.Mich. 1976), *rev'd on other grounds*, 547 F.2d 339 (6 Cir. 1977), and *Stroble v. Anderson*, 587 F.2d 830 (6 Cir. 1978); *Beebe v. Vaughn*, 430 F.Supp. 1220, 1222–23 (D.Del.1977). Assuming a substantial jurisdictional issue exists, this ample precedent demonstrates that where, as here, the United States is a sending jurisdiction, federal rights are implicated and the court has jurisdiction over the claim.

Respondents next suggest in somewhat vague terms that petitioner failed to raise the IAD claim according to State procedure and thus should be deemed to have committed a procedural default barring federal habeas corpus review under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

594 (1977), and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1977). They contend that the IAD claim was first raised in a supplemental brief filed in the Appellate Division after the hearing on the original remand from the Appellate Division disclosed to petitioner's counsel the existence of an IAD claim and that the "Appellate Division, in accordance with New York's preservation of issues requirements did not apparently pass on the merits of the newly raised Agreement issue." (Respondent's Memorandum at 14.)

■ On the first day of his trial, however, petitioner moved in accordance with New York Criminal Procedure Law § 210.45 for an order dismissing the indictment on the ground that defendant had been "denied his right to a speedy trial, pursuant to the applicable provisions of the Criminal Procedure Law, and for whatever additional relief this Court may deem just and proper." While it is clear that the motion raised the speedy trial issue in terms of the Sixth Amendment right and the New York statutory counterpart, CPL § 30.20, New York courts will entertain federal claims on appeal "even though not expressly raised at trial if a similar claim seeking similar relief *was* clearly raised." *County Court of Ulster County v. Allen*, 442 U.S. 140, 151 n.10, 99 S.Ct. 2213, 2221, 60 L.Ed.2d 777 (1979), citing *People v. DeBour*, 40 N.Y.2d 210, 214–15, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976); *People v. Robbins*, 38 N.Y.2d 913, 382 N.Y.S.2d 977, 346 N.E.2d 815 (1976); *People v. Arthur*, 22 N.Y.2d 325, 292 N.Y. S.2d 663, 239 N.E.2d 537 (1969) (emphasis in original). *Cf. People v. Primmer*, 46 N.Y.2d 1048, 416 N.Y.S.2d 548, 389 N.E.2d 1070 (1979) (IAD claim raised for first time on appeal not reviewable).

■ Upon learning of the existence of a possible violation of the IAD at the hearing on remand from the Appellate Division on the speedy trial issue, petitioner filed a supplemental brief squarely raising the claim. Respondents assert that the Appellate Division "apparently" did not consider it or pass on its merits. Although it is not possible to determine whether the IAD

point was considered or passed on by the Appellate Division, it is clear it was presented to the court. *Cf. Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978). Thus, the Appellate Division had an opportunity to pass on the claim specifically brought to its attention and, in the absence of any express indication that the court did not consider the point adequately preserved for appeal, see *Wainwright v. Sykes, supra,* 433 U.S. at 74, 97 S.Ct. at 2499, this court cannot hold that petitioner committed a procedural default barring federal habeas review. In this situation, comity will not be offended, judicial economy will be served, and the interests of New York will be respected if the claim is considered on the merits. See *County Court of Ulster County v. Allen, supra,* 442 U.S. at 154 & n.13, 99 S.Ct. at 2223. *Cf. Rivera v. Harris,* Dkt. No. 78 C 349, slip op. (S.D.N.Y. July 28, 1978).

This conclusion is at least implicitly supported by the citation in *County Court of Ulster County v. Allen, supra,* to *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), *affirming United States v. Ford,* 550 F.2d 732 (2 Cir. 1977), which construes various provisions of the IAD. In *Mauro,* the Court concluded that appellant's failure to invoke the IAD in specific terms in the trial court did not result in a waiver of the IAD claim where the record disclosed that he did make the objection in general terms, thereby placing the Government on notice of the substance of the claim and, as here, did not actually know that a detainer was lodged against him. See also *United States v. Eaddy,* 563 F.2d 252, 255 (6 Cir. 1977); *United States v. Cyphers,* 556 F.2d 630 (2 Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977).

■ The substance of petitioner's IAD claim was most certainly raised in his motion under CPL § 210.45, although the precise ground was not raised. Applying the rationale of *United States v. Mauro, supra,* to the facts of this case, however, the court concludes that petitioner did not waive the IAD claim and sufficiently complied with

State procedural requirements so that he is not barred from pursuing his federal habeas remedies. Finally, the court would hold, if necessary, that even were there noncompliance with the rule, petitioner has made a sufficient showing of cause for such noncompliance and of actual prejudice under the test first adopted in *Francis v. Henderson, supra.* See also *Wainwright v. Sykes, supra.*

Petitioner's claim, however, stumbles on quite a different obstacle: it is not an independent ground for issuance of a writ of habeas corpus under § 2254. See *Foran v. Metz,* 463 F.Supp. 1088, 1096 (S.D.N.Y. 1979), *aff'd on other grounds* (2 Cir., April 6, 1979); *Rivera v. Harris, supra.* In *Foran,* the court applied the holding of *Edwards v. United States,* 564 F.2d 652 (2 Cir. 1977), in which the Court of Appeals for this circuit held that the IAD is not a ground for relief under 28 U.S.C. § 2255, to a State prisoner seeking relief under § 2254. The *Foran* court reached this result following the analysis adopted by the Supreme Court in *Davis v. United States,* 417 U.S. 33, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). In holding that errors of federal law that lack a constitutional dimension are nonetheless cognizable under the "laws of the United States" provision of § 2255, the *Davis* Court stated that

> "there can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254 . . . under which relief is available on the ground that '[a person] is in custody in violation of the Constitution or *laws* or treaties of the United States.'" 94 S.Ct. at 2304 (emphasis in original).

The Court went on to place a significant limitation on its holding. It noted that not every violation of federal law is a ground for relief under § 2255. Rather, a claimed error is an independent basis only if it is "a fundamental defect which inherently results in a complete miscarriage of justice" and presents "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* at 2305. By implication, this standard is to

be applied not only to motions under § 2255 but also to petitions under § 2254 alleging nonconstitutional errors of law. See *Losinno v. Henderson*, 420 F.Supp. 380, 384 (S.D. N.Y.1976), *citing Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 3043 n.10, 49 L.Ed.2d 1067 (1976). See also *Foran v. Metz, supra*.

Thus, faced with what appears on its face to be a violation of the provisions of the IAD, this court is constrained to hold that such a claim is not an independent basis for habeas relief. Although other courts have concededly reached different results, see, *e. g., Stroble v. Anderson*, 587 F.2d 830 (6 Cir. 1978); *State ex rel. Bailey v. Shepard*, 584 F.2d 858 (8 Cir. 1978); *Echevarria v. Bell*, 579 F.2d 1022 (7th Cir. 1978), it appears that in this circuit the claim is properly analyzed after *Edward v. United States, supra*, as a factor to be considered in determining whether petitioner has made out a speedy trial claim under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See *Foran v. Metz, supra*, 463 F.Supp. at 1096. *Cf. United States v. Carini*, 562 F.2d 144, 148 (2 Cir. 1977) (violation of Speedy Trial Act, 18 U.S.C. §§ 3161–74, is factor in weighing speedy trial claim).

This result is not inconsistent with the remedial purposes of the IAD. Since the heart of the Agreement is to protect a prisoner's rehabilitative opportunities, a violation should be considered in a federal collateral proceeding in terms of the prejudice it causes a prisoner. Nor does this deprive a prisoner of the dismissal sanction where applicable. State courts are duty bound to follow federal law and the court expects that they shall do so, with resort, of course, from adverse decisions to the United States Supreme Court by petition for writ of certiorari. In a collateral proceeding where review is narrowly circumscribed, it is appropriate that the *Davis* standard apply and relief be granted only where there is a "fundamental defect which inherently results in a complete miscarriage of justice" and presents "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." It

is clear that a law such as the IAD that is essentially prophylactic in nature does not meet this standard. See *Stone v. Powell, supra*, 96 S.Ct. at 3043 n.10.

Moreover, even were the IAD an independent basis for relief, petitioner has failed to sustain his burden of proving that continuances were granted in violation of the Agreement and thus that his claim is meritorious. See *Stroble v. Egeler, supra*, 408 F.Supp. at 634–35. In the instant case, as in *Stroble*, there are no allegations that petitioner was not present in open court on any of the days continuances were granted. Nor have affidavits been filed—despite ample opportunity to do so—suggesting that counsel for petitioner was not present or that the continuances were not reasonable or necessary. Rather the record does not indicate affirmatively that the IAD's procedural requirements were not met. In these circumstances, petitioner has not carried his burden in this habeas proceeding.

### Speedy Trial Claim

Petitioner also claims that a nineteen-month delay between the issuance of an arrest warrant on March 22, 1973, and the commencement of trial on February 5, 1975, cannot be attributed to him, was not excusable, and thus resulted in a violation of his Sixth Amendment right to a speedy trial. A nineteen-month delay, however, is not unreasonable *per se*. See, *e. g., United States v. Cyphers*, 556 F.2d 630, 636 (2 Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (delay of 33 months); *United States v. Mejias*, 552 F.2d 435 (2 Cir. 1977) (delay of 20 months); *United States v. Goldman*, 539 F.Supp. 352 (S.D.N.Y.1977) (delay of 29 months). It must be balanced with other factors, such as the reasons for the delay, the defendant's assertion of the right, and the prejudice resulting to the defendant from the delay. See *Barker v. Wingo, supra*. See also *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2 Cir. 1979).

While the length of delay of nineteen months—exclusive of delay attributa-

ble to petitioner—is sufficient to trigger speedy trial contentions, petitioner's claim on balance lacks merit. First, it appears that the primary reason for the delay was the decision of the State to forego seeking petitioner's custody while he was in custody of federal authorities with outstanding charges against him for robbery and escape. Under these circumstances, it cannot be said that the decision to await resolution of these charges was unreasonable. It appears that from April to August 1973, petitioner was actively engaged in disposing of a federal bank robbery charge and thereafter was compelled to appear on three successive weeks in the United States District Court in Michigan to dispose of escape charges. *Cf. Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Thus, petitioner's argument that the State should have compelled his appearance in Nassau County earlier is hardly weighty in view of the demands of the administration of two jurisdictions. It is probable that had the State authorities sought his appearance earlier, petitioner would have had cause to complain about unwarranted interference with his ability to litigate the federal charges.

Further, delay from petitioner's arraignment on March 29, 1974, to trial was apparently caused at least in part by petitioner's requests for adjournments or acquiesced in by him. Delay during this period hardly sustains petitioner's claim.

Finally, the court has reviewed petitioner's claim of prejudice resulting from the delay and finds it singularly unpersuasive. There are neither allegations that the delay compromised petitioner's ability to present his defense nor assertions that he was placed under an unusual psychological burden or was deprived of rehabilitative opportunities as a result of any delay. Moreover, since demand for a speedy trial was apparently not made until the day of trial, it cannot be said that petitioner's assertion of the right suggests his concern with any of the factors typically associated with an adequate demonstration of prejudice under *Barker v. Wingo, supra,* notwithstanding a possible violation of the IAD. In these circumstances, petitioner's right to a speedy trial has not been violated.

*Fair Cross-Section Claim*

Petitioner's final contention is that he was not convicted by a petit jury selected from a representative cross-section of the community. His trial occurred during a period in which New York Judiciary Law § 665(7) was in force and afforded women who chose not to accept jury duty with an automatic exemption upon filing a postcard. This law was drawn into question by the Supreme Court's decision in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), which held unconstitutional a law that permitted selection of women for jury service only upon their filing a declaration of their desire to serve. Such an automatic exemption was held to be in violation of the Constitution's fair cross-section requirement.

The Court rendered its *Taylor* decision on January 21, 1975, and petitioner's jury was selected on February 5, 1975, the effective date of the repeal of Judiciary Law § 665(7) by the New York legislature. It is undisputed, however, that the jury venire from which petitioner's petit jury was chosen was selected under the repealed law.

Recently in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Court construed a statute almost identical to the repealed New York law and held that systematic exclusion of women that results in jury venires averaging less than 15% female violates the Constitution's fair-cross-section requirement. It appears in the instant case, however, that the panel from which petitioner's petit jury was selected was composed of 26% women and, during the year 1974, jury panels in Nassau County averaged 33% women. Women at that time constituted 54% of the population of Nassau County. See *People v. Parks,* 41 N.Y.2d 36, 390 N.Y.S.2d 848, 359 N.E.2d 358 (1976). These statistics are not seriously challenged as inappropriate for the basis of this court's decision.

Although the Court's opinion in *Duren* provides scant guidance in determining the deviation from the ideal permissible in such

cases, it does suggest that petitioner has the burden of demonstrating that the discrepancy between the percentage of women in jury venires and the percentage of women in the community is so gross as to support a conclusion that women were not fairly represented in the jury venire. *Duren v. Missouri, supra*, 99 S.Ct. at 669. Applying this concededly ambiguous standard, it is this court's opinion that jury venires averaging 33% is not a result that yields unconstitutional representation within the meaning of *Duren.*

It is, moreover, clear that this case is one of a limited number tried during the approximately two-week interlude between the decision in *Taylor* and the repeal of the New York statute. Thus, the administration of justice in Nassau County arguably required that trials move forward during the period in which the old law was being evaluated in light of *Taylor.*

■ Since there are significant differences in the Louisiana statute held unconstitutional in *Taylor* and the Missouri statute (similar to New York's) construed in *Duren* that led the Court to formulate a flexible rule in the latter case, the determination of the State to proceed under the statute in the interest of judicial administration cannot be faulted where the venire selection system resulted in a percentage of women on panels fully twice the average in the *Duren* case and the percentage of women on such panels was over half that in the general population. Thus, under *Duren*'s criteria, a system of selection that produced jury venires averaging approximately 33% female did not violate the Constitution's fair-cross-section requirement and deprived petitioner of no right.

Accordingly, petitioner's application is denied.

SO ORDERED.