**Jesse James JACKSON,
Petitioner-Appellant,**

v.

**Charles C. SCULLY, Superintendent,
Green Haven Correctional Facility,
Respondent-Appellee.**

**No. 249, Docket 85–2202.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1985.

Decided Jan. 14, 1986.

292

Guy Miller Struve, New York City (Davis, Polk & Wardwell, of counsel), for petitioner-appellant.

Bruce E. Whitney, Mineola, Dist. Atty. of Nassau County (Robert Abrams, Atty. Gen. of N.Y.), for respondent-appellee.

Before VAN GRAAFEILAND, CARDAMONE and MINER, Circuit Judges.

MINER, Circuit Judge:

Jesse James Jackson appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, J.), denying his petition for a writ of habeas corpus.

In March of 1975, Jackson was convicted in Nassau County Court of murder in the second degree and was sentenced to a term

of imprisonment of fifteen years to life. The Appellate Division affirmed his conviction without written opinion, *People v. Jackson*, 52 A.D.2d 758, 382 N.Y.S.2d 213 (2d Dep't 1976), and the New York Court of Appeals denied leave to appeal, *People v. Jackson*, 39 N.Y.2d 1063, 389 N.Y.S.2d 1032, 357 N.E.2d 1028 (1976). Prior to the filing of the instant petition, Jackson raised numerous challenges to his conviction in state and federal courts, all of which were denied.[1]

## I. BACKGROUND

On the evening of February 1, 1974, Carl Campbell was shot while in the vicinity of 96 Wellsley Street in Hempstead Heights, New York. He later died of complications resulting from the gunshot wound. Following a police investigation, Jackson and co-defendant Willie Somerville were arrested, charged with second degree murder and tried in Nassau County Court. At the conclusion of the prosecution's case, the indictment as against Somerville was dismissed. The case against Jackson, however, was submitted to the jury, and a verdict of guilty was returned.

Prosecution witnesses testified that during an evening in mid-January of 1974,

Jackson and Campbell were involved in an altercation at a bar in Hempstead Heights, New York. Later that evening, and also on the following evening, Jackson returned to the bar in search of Campbell, offering patrons and employees money if they would identify Campbell to him. One bar patron, Bobby Miller, testified that Jackson said that he wanted to "get" or "kill" the person who had struck him. Miller, however, was uncertain of Jackson's exact words. Jimmy Sledge, an acquaintance of Jackson's aunt, testified that when Jackson arrived at his aunt's home with Somerville on the night of the shooting, he spoke loudly about his fight with Campbell. According to Sledge, Jackson left the house for a short period of time, and, upon returning, said to his mother "Mama, I spotted him. Give me your gun." At that time, Sledge saw Jackson's mother give Jackson an unidentified object from her purse. Jackson and Somerville again left the house and returned approximately thirty minutes later; Jackson then said to his mother "I got him," and handed her an object which she put in her purse.

Charles Milton, an acquaintance of Somerville, testified that he saw Jackson and Somerville at the bar on the night of the

---

1. In June of 1976, Jackson filed a pro se habeas corpus petition in the United States District Court for the Western District of New York. The court denied the petition primarily for failure to exhaust state remedies. *Jackson v. Smith*, No. 76–420 (W.D.N.Y. Aug. 12, 1977). The court, however, dismissed on the merits Jackson's claim that the trial judge's failure to charge the jury that it had to find the murder weapon to have been a pistol violated his due process rights. *Id.* at 2.

Jackson next filed a pro se motion to vacate his conviction in Nassau County Court, N.Y. Crim.Proc.Law § 440.10 (McKinney 1983), contending that the judgment was the result of an unconstitutional arrest and interrogation. The court denied the motion, holding that Jackson had failed to raise the issue at trial or on direct appeal and that he had failed to supply a proper legal basis for the requested relief.

In March of 1978, Jackson filed a second pro se habeas corpus petition in New York State Supreme Court, Dutchess County. The petition was transferred to Nassau County Court where it was denied and dismissed. The Appellate Division and the New York Court of Appeals

denied leave to appeal. In October of 1979, Jackson moved in Nassau County Court for a new trial on the grounds of newly discovered evidence. The court denied the motion and the Appellate Division denied leave to appeal.

In April of 1981, Jackson filed a third pro se habeas corpus petition in New York State Supreme Court, Dutchess County. The court denied and dismissed the petition on various procedural grounds. The Appellate Division affirmed the judgment without opinion, *People ex rel. Jackson v. Scully*, 93 A.D.2d 1006, 461 N.Y. S.2d 664 (2d Dep't 1983), and the New York Court of Appeals denied leave to appeal.

The present petition was filed in April of 1980. In September of 1981, while the last state proceeding was still pending, the district court dismissed the petition partially on the merits and partially for failure to exhaust state remedies. Counsel was appointed for Jackson's appeal and the parties entered into a stipulation remanding the matter to district court until completion of the state proceeding. The district court then held an evidentiary hearing and subsequently issued a second opinion dismissing the petition.

shooting. Later that evening, while standing near the shooting site, Milton observed a car with two occupants and only parking lights on go by. The car then turned onto a side street and followed a third person who was walking there. Milton then heard gun shots and observed someone running away.

Edna Kimble, Somerville's sister, testified that Jackson and her brother visited her house on the night of the shooting. She testified that Jackson told her about his fight at the bar and how he had "gotten the guy" who had beaten him. In response to her inquiry as to whether he had killed Campbell, Jackson said "[i]t's up to him and God." Jackson then went on to describe to Kimble how Campbell had crawled on his hands after being shot.

In the petition at bar, Jackson set forth five arguments for reversal of his conviction, all of which were rejected by the district court after an evidentiary hearing. For the reasons set forth below, we affirm.

## II. DISCUSSION

### A. *Sixth Amendment Claim*

When Milton was interviewed by police prior to trial, he identified the two individuals whom he had observed in the car as Somerville and Jackson, and he signed a statement to that effect. He also informed the officers that subsequent to the night of the shooting he had met Somerville in jail, where Somerville had confirmed that he and Jackson were present in the vehicle. At a pre-trial conference, the prosecutor agreed with defense counsel that Milton's statement regarding his conversation with Somerville could create a sixth amendment problem and therefore assured the court that he would limit his examination of Milton to Milton's direct knowledge of the events. While on the stand, however, Milton contradicted his earlier statements and denied first-hand knowledge of the identity of the two individuals in the vehicle. Upon further questioning by the prosecutor, Milton stated that "[t]he only reason I knew it was them or thought it was them was because of me and Somerville was talking

about the case [sic]." Joint Appendix at 975. Jackson contends that the failure to strike this statement violated *Bruton v. United States*, 391 U.S. 123, 126–37, 88 S.Ct. 1620, 1622–28, 20 L.Ed.2d 476 (1968) (sixth amendment right of confrontation infringed when a confession by one defendant implicating another defendant is placed directly, or indirectly, before the jury). The district court rejected this claim. The court held that although Jackson had sufficiently exhausted his *Bruton* claim in state court, he had failed to raise a contemporaneous objection on *Bruton* grounds at trial, *see* N.Y.Crim.Proc.Law § 470.05(2) (McKinney 1983), and that absent a showing of cause and prejudice, this procedural default barred him from raising the issue on federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 82–90, 97 S.Ct. 2497, 2504–2508, 53 L.Ed.2d 594 (1977). Furthermore, the court determined that even if Jackson's counsel had lodged such an objection, Milton's statement was neither crucial to the prosecution's case nor devastating to Jackson's defense and thus did not violate the sixth amendment right of confrontation. *Rado v. Connecticut*, 607 F.2d 572, 579 (2d Cir.1979), *cert. denied*, 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980).

On appeal, Jackson contends that his counsel in fact raised a *Bruton* objection in the form of a motion to strike Milton's testimony in its entirety. Alternatively, Jackson argues that counsel's failure to lodge such an objection would constitute ineffective assistance of counsel, satisfying the cause and prejudice exception under *Wainwright*. The prosecution, on the other hand, contends that Jackson has not exhausted his state remedies as to this claim and in fact has never raised the claim in a post-conviction proceeding in state court.

We find that Jackson has exhausted his state remedies as to this claim. In *Daye v. Attorney General*, 696 F.2d 186 (2d Cir. 1982) (in banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), we described four ways in which a defendant in a state criminal proceeding could fairly

present the constitutional nature of his claim to a state court without expressly referring to the constitutional provision at issue: (1) by relying on federal case law employing federal constitutional analysis; (2) by relying on state case law employing federal constitutional analysis in similar fact situations; (3) by asserting "the claim in terms so particular as to call to mind a specific right protected by the Constitution;" and (4) by alleging a factual situation "well within the mainstream of constitutional litigation." *Id.* at 194.

■ We conclude that Jackson's second pro se habeas petition, in which he characterized Milton's testimony as both hearsay and "illegal, incompetent and prejudicial evidence," satisfied at least the fourth, and perhaps the third, method of exhaustion enunciated in *Daye.* Although the petition made no mention of a sixth amendment right of confrontation, reference to the testimony itself sufficiently apprised the state court of the constitutional dimension of the claim. *See Hutchins v. Wainwright,* 715 F.2d 512, 519 (11th Cir.1983) (substance of petitioner's claim, although obliquely stated, was sufficient to alert state court to confrontation issue where type of situation was "exactly what the confrontation clause is designed to prohibit"), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984).

■ Turning to the merits of the petition, we agree with the district court that the *Bruton* claim must fail.[2] Even assuming Milton's statement was admitted improperly, Jackson's sixth amendment right of confrontation was not violated unless the statement was crucial to the prosecution's case or devastating to Jackson's defense. *Rado v. Connecticut,* 607 F.2d at 579; *United States v. Puco,* 476 F.2d 1099, 1104 (2d Cir.), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973). While these terms do not embody a "precise standard," *Puco,* 476 F.2d at 1104, it is clear that the evidence at issue must be "in some way essential, indeed central, to the prosecution's case." *Id.* Where, absent the tainted testimony, a sufficient basis exists for the jury to convict, the testimony does not violate the sixth amendment. *See United States v. Wright,* 588 F.2d 31, 38 (2d Cir.1978), *cert. denied,* 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979).

Milton's one-sentence, disjointed statement clearly was not central to the prosecution's case. At no time during Milton's direct examination did the prosecutor question him about his discussion with Somerville or seek to introduce the conversation as proof of Jackson's participation in the crime. Rather, Milton volunteered this statement in the midst of contradicting his pre-trial identification of the two individuals in the car. Although the prosecutor did inform the jury in his opening that Milton could identify Jackson as being present in the car, this claim obviously was shattered when Milton recanted while on the stand. From a careful review of the record, we believe that the prosecutor's repeated questions to Milton about his ability to identify the individuals in the car were not designed to elicit information about the conversation

---

2. By reaching the merits of the sixth amendment claim, we need not determine whether Jackson's failure to raise an objection to Milton's statement at trial constituted a procedural default rendering the claim unavailable for consideration on federal habeas review under *Wainwright.* In its decision denying Jackson's second pro se habeas corpus petition, the state court was silent as to its basis for rejecting the claim and the Appellate Division and New York Court of Appeals denied leave to appeal. When the state appellate courts are silent as to the basis for dismissal of a claim, we have assumed that the basis for the dismissal is procedural default "only if the state prosecutor argued procedural default in the state appellate court."

*Barber v. Scully,* 731 F.2d 1073, 1075 (2d Cir. 1984); *see Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). Here, however, the prosecution did not argue procedural default in the state habeas proceeding. Consequently, the *Wainwright* issue in this case presents the question whether a procedural default exists when the state appellate courts are silent on the claim and the prosecution did not argue the issue in the state proceeding. While some support exists in this circuit for holding a procedural default to have occurred in such circumstances, *Barber v. Scully,* 557 F.Supp. 1292, 1294–95 (S.D.N.Y. 1983), *aff'd on other grounds,* 731 F.2d 1073 (2d Cir.1984), we need not reach the issue here.

with Somerville, but to give Milton the opportunity to conform his testimony to his prior statements.

Jackson's assertion that the critical nature of Milton's testimony was established by the jury's request for a read-back of Milton's testimony as well as by the fact that during the read-back several jurors followed the route of the car on small maps they had drawn, is unpersuasive. As the district judge noted, the jury's interest in Milton's *entire* testimony merely reflected its concern with "the place and time of the movements of the vehicle involved in the killing ... [and] cannot be the basis for inferring that the jury considered the Milton testimony to be crucial in establishing the identification of Jackson as the perpetrator of the homicide." *Jackson*, slip op. at 31. In light of the other evidence at trial clearly implicating him in the crime, we simply are unwilling to join in Jackson's speculation that the read-back request demonstrated the jury's reliance on Milton's statement for identification purposes. *See United States v. Rogers*, 549 F.2d 490, 502 (8th Cir.1976) ("the overall evidence of appellant's guilt was overwhelming and his conviction cannot reasonably be said to have been influenced by the speculative use by the jury of the impeachment statement as substantive evidence"), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977).

Equally important, Milton's statement was not "devastating" to Jackson's defense. Absent Milton's statement, it is beyond dispute that sufficient evidence existed for the jury to convict Jackson. The testimony of Jimmy Sledge regarding his observations at the home of Jackson's aunt on the night of the shooting, and of Edna Kimble regarding Jackson's statements to her after the shooting, constituted strong evidence of Jackson's involvement in the crime.

## B. *Fourth and Fifth Amendment Claims*

On February 2, 1974, several Nassau County police officers visited Jackson at his home and requested that he accompany them to the police station for questioning concerning the shooting. Jackson apparently was not informed that he could refuse this request, and the officers conceded at the hearing before Judge Griesa that probable cause to arrest Jackson did not exist on February 2nd. Following additional questioning at the station, Jackson supposedly provided the officers with the names of certain witnesses who ultimately testified for the prosecution. Jackson also alleges that he was not advised of his *Miranda* rights on February 2nd or at his formal arrest on February 11th and that he was denied the presence of an attorney despite repeated requests. Thus, Jackson claims that the trial court should have suppressed the names of witnesses derived from the February 2nd questioning as fruits of an illegal arrest. *Wong Sun v. United States*, 371 U.S. 471, 479–91, 83 S.Ct. 407, 412–19, 9 L.Ed.2d 441 (1963). He also argues that the failure of the police to inform him of his *Miranda* rights and to honor his requests for counsel on both February 2nd and 11th further required the trial court to suppress the witness names as violative of his fifth amendment rights. *See United States v. Downing*, 665 F.2d 404, 407–09 (1st Cir.1981); *Parker v. Estelle*, 498 F.2d 625, 629–30 (5th Cir.1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

The district court rejected these claims on two grounds. First, the court credited the hearing testimony of the police officers who in general terms testified that Jackson had been given his *Miranda* rights prior to questioning, that he had not provided them with the names of future prosecution witnesses during the questionings and that he never had requested counsel to be present during his discussions with the officers. Second, the court pointed out that Jackson had failed to set forth any objection raising these claims at trial or on direct appeal and thus was guilty of a procedural default which barred him from asserting them in a federal habeas corpus petition. *Wainwright*, 433 U.S. at 82–90, 97 S.Ct. at 2504–2508; *Stone v. Powell*, 428 U.S. 465, 481–

82, 96 S.Ct. 3037, 3046–47, 49 L.Ed.2d 1067 (1976).

 We agree that Jackson is barred from asserting these claims. As to the fourth amendment claim, we previously have held that "a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it." *McPhail v. Warden, Attica Correctional Facility,* 707 F.2d 67, 69 (2d Cir.1983); *accord Gates v. Henderson,* 568 F.2d 830, 837 (2d Cir.1977) (in banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). New York clearly provided Jackson with such an opportunity. N.Y.Crim. Proc.Law art. 710 (McKinney 1984). Consequently, Jackson's failure to allege a fourth amendment claim at trial or on direct appeal bars him from doing so now.

 The fifth amendment claim fares no better. A federal court may not review a claim that was forfeited by a procedural default under state law, absent a showing of cause and prejudice. *Wainwright,* 433 U.S. at 82–90, 97 S.Ct. at 2504–2508. It is beyond question that, under New York law, Jackson's failure to raise the issue at trial or on direct appeal precludes further state court review. N.Y.Crim.Proc.Law §§ 440.-10(2)(c), 470.05 (McKinney 1983).[3]

 Jackson does not contest the fact that he failed to raise these claims at trial or on direct appeal. Rather, he contends that his trial counsel failed to raise any objection because they were unaware of the application of the fruit of the poisonous tree doctrine to witnesses. This lack of knowledge, and the resultant failure to object, are alleged to constitute ineffective assistance of counsel, satisfying the cause and prejudice exception under *Wainwright* and creating an "unconscionable breakdown" in state procedures which prevented utilization of the state court remedy under *Stone.* We disagree.

Mere failure to raise an objection generally is not a basis for asserting cause under *Wainwright. See Dudley v. Dalsheim,* 686 F.2d 110, 112 (2d Cir.1982) (per curiam); *Minor v. Harris,* 556 F.Supp. 1371, 1377 (S.D.N.Y.), *aff'd,* 742 F.2d 1430 (2d Cir. 1983). The Supreme Court recently has noted that "[u]nderlying the concept of cause, ... is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel ... and that defense counsel may not flout state procedures and then turn around and seek refuge in federal court from the consequences of such conduct." *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984).

While *Reed* does provide that the cause requirement may be satisfied in various unstated situations where "a procedural default is not attributable to an individual decision by counsel made in pursuit of his client's interests," *id.,* it clearly is Jackson's burden to establish that counsels' incompetence was the cause for the failure to object. We find that he has failed to meet this burden. Trial counsels' testimony at the evidentiary hearing concerning their familiarity with fourth amendment doctrine—the only evidence offered by Jackson on the ineffectiveness issue—is too ambiguous to support a finding of ineffective assistance. We see no reason to question the district court's finding—that Jackson's failure to inform his attorneys of the circumstances surrounding his alleged improper arrest and interrogation was the reason for the failure to object. Not having satisfied the cause and prejudice standard of *Wainwright* or the unconscionable breakdown standard under *Stone,* Jackson's claims must fail.

 Jackson's final three claims do not require extended discussion. His claim that the jury should have been required to find that the murder weapon was a pistol,

---

**3.** Unlike procedural default with respect to the *Bruton* claim, here the basis for the state appellate court's rejection of the claim is clear. When Jackson first raised the issue in state supreme court via a motion to vacate his conviction, the court expressly held that Jackson was barred from asserting the claim because of his failure to raise the issue at trial or on direct appeal. Accordingly, there can be no question that *Wainwright* applies.

as charged in the indictment, must be rejected. This issue was the topic of Jackson's prior federal habeas petition where Judge Curtin found "no indication of any error of such magnitude as to deprive Jackson of a federal constitutional right ... or that the challenged jury instruction constituted a clear denial of due process so as to render the trial fundamentally unfair." *Jackson v. Smith*, No. 76–420, slip op. at 2 (W.D.N.Y. Aug. 12, 1977). Accordingly, the district court's denial of this claim was within its discretion, *see Sanders v. United States*, 373 U.S. 1, 15–19, 83 S.Ct. 1068, 1077–1079, 10 L.Ed.2d 148 (1963), and the ends of justice do not require the issue to be reexamined.[4]

■ Jackson's argument regarding an outburst by Edna Kimble, and the trial judge's assertedly inadequate response thereto, also is meritless.[5] The trial judge went to great lengths to assure that Jackson would not be prejudiced by Kimble's one-sentence remark about Somerville's counsel, including polling the jury to determine whether they could continue to serve impartially, using a special charge and specifically instructing them not to use the remarks against either defendant. In light of these curative measures, we cannot say that Jackson's right to an impartial tribunal was infringed.

Finally, Jackson's attacks on the sufficiency of the evidence are unpersuasive. After careful review of the record, we find that the evidence before the jury permitted it to find that Jackson killed, and intended

to kill, Campbell. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

### III. CONCLUSION

The district court's order denying the petition is affirmed.

---

**4.** We reject Jackson's assertion that reconsideration of this claim is required because of a change in the law since the district court's decision. The cases cited by Jackson dealing with a due process right to notice of the charge expressly rely upon *Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), wherein the Supreme Court noted that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge ... [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Id.* at 201, 68 S.Ct. at 517. *E.g., Plunkett v. Estelle*, 709 F.2d 1004, 1009–11 (5th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984); *Tarpley v. Estelle*, 703 F.2d 157, 160–61 (5th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d

697 (1983). Moreover, at least one decision cited by Jackson which applies this principle to a habeas corpus proceeding, predates the district court's opinion. *Watson v. Jago*, 558 F.2d 330 (6th Cir.1977).

**5.** In response to a statement made by Somerville's counsel that she was a "compulsive, pathological liar," Edna Kimble responded as follows:

That's those two liars right down there. Those are the liars sitting in the courtroom. They're sitting in the courtroom. Those are the liars and you are lying right along with them because I think you know—

Joint Appendix at 1183.