Melvin JAMES, Petitioner,

v.

Walter KELLY, Respondent.

No. CV 86–1497.

United States District Court,
E.D. New York.

Nov. 21, 1986.

---

Melvin M. James, pro se.

Denis Dillon, Nassau County Dist. Atty., Mineola, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner *pro se* Melvin James, has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

## PROCEDURAL BACKGROUND

James was convicted, after a jury trial in County Court, Nassau County, of one count of murder in the second degree and two counts of assault in the first degree. Petitioner was sentenced on February 2, 1982, to an indeterminate term of 18 years to life for murder and two indeterminate terms of 4 to 12 years for assault, all sentences to run concurrently. On May 23, 1983, the Appellate Division of the Supreme Court of the State of New York ("Appellate Division") unanimously affirmed the judgment of conviction, without opinion. Leave to appeal to the New York Court of Appeals was denied on July 7, 1983.

On January 13, 1984, the Nassau County Court, in an unreported decision, denied James' post-judgment motion pursuant to New York Criminal Procedure Law ("CPL") 440.10 to vacate judgment. Leave to appeal to the Appellate Division was denied on July 7, 1984.

On October 10, 1984, James filed his first habeas corpus petition in this Court alleging the following grounds for relief: (1) he was denied the right to a speedy trial as required by the Interstate Agreement on Detainers ("IAD"); (2) he was denied the effective assistance of trial counsel; (3) the prosecution suppressed exculpatory evidence; (4) the trial court lacked jurisdiction because the indictment failed to allege an essential element of the crimes charged; and (5) identification evidence was improperly admitted at trial. On February 7, 1985 this Court dismissed that petition, without prejudice, ruling that petitioner had failed to exhaust his state court remedies with respect to his claim alleging a violation of the IAD.

James then moved in the County Court of Nassau County for an order vacating judgment. James' motion was denied on

September 11, 1985. On January 13, 1986, the Appellate Division denied James' application to appeal the denial of his motion to vacate judgment.

In the instant petition, petitioner raises the same five grounds for relief enumerated above. In addition, petitioner alleges: (1) he was denied the right to compulsory process and the right to present evidence favorable to his defense; and (2) the verdict was against the weight of the evidence.

## THE FACTS

On November 8, 1979, James, accompanied by Dorothea Hunter, attended a concert at the Nassau Coliseum featuring a musical group called "The Jackson Five." One Clinton Barnes, accompanied by Angela Fowler, also attended this concert. The two couples ran into each other while at the Nassau Coliseum that evening. Barnes and Hunter began to argue about money that Hunter allegedly stole from Barnes. James agreed to meet Barnes following the performance to discuss the matter further.

After the concert, James and Barnes met near the main entrance to the coliseum. The two men began to argue and a struggle ensued. Jimmy Valentino Miles, a friend of James, was also present during the confrontation. James allegedly drew a gun, which had been wrapped in a white jacket, shot Barnes at close range, dropped the white jacket, fired two more shots at Barnes, and then disappeared into the crowd. As a result of the shooting Barnes was killed and one of the three shots fired into him exited his body and lodged in the arm of Belinda Rivers, an uninvolved bystander.

After the shooting, James and Miles, as well as others who had accompanied them to the concert, fled from the crime scene. James, while living under an assumed name, was arrested and convicted in Georgia on an unrelated charge. On October 14, 1980, the Nassau County Police Department discovered James' presence in a Georgia facility and on the following day sent a warrant to be lodged against him as a

detainer. On November 12, 1980, the Nassau County District Attorney sent a request for temporary custody to the Georgia authorities. On December 10, 1980, James was granted parole in Georgia and waived extradition to New York. James' parole became effective on December 22, 1980. On or about that date he was taken from Georgia by the Nassau County Police Department and brought to New York to stand trial.

At his trial, James argued that Miles had in fact done the shooting. James claimed that as he was retreating from his struggle with Barnes, Miles obtained a gun from the trunk of his car and shot Barnes three times.

## INTERSTATE AGREEMENT ON DETAINERS

As a first ground for relief, petitioner claims his right to a speedy trial under the IAD, 18 U.S.C. App. 2, has been violated. Congress enacted the IAD in 1970. The purpose of the IAD is to effectuate the "expeditious disposition" of charges outstanding against a prisoner already incarcerated in another jurisdiction, and to "provide cooperative procedures among member states to facilitate such disposition." *United States v. Mauro*, 436 U.S. 340, 351, 98 S.Ct. 1834, 1842, 56 L.Ed.2d 329 (1978). The federal government, forty six states and the District of Columbia have entered into agreements under the IAD.

Article IV of the IAD provides the means by which the "receiving" state can secure the availability of a prisoner, incarcerated in the "sending" state, against whom a detainer has been lodged. Subdivision (c) of Article IV limits the receiving states ability to hold the prisoner pending a disposition. Subdivision (c) provides:

> In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdic-

tion of the matter may grant any necessary and reasonable continuance.

18 U.S.C. App. § 2 (IV)(c) (1982); N.Y. Crim.Proc.Law § 580.20(IV)(c) (1984).

Article VI of the IAD contains a tolling provision applicable to Article IV. Article VI(a) reads:

> In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled wherever and for so long as the prisoner is unable to start trial, as determined by the court having jurisdiction of the matter.

18 U.S.C. App. § 2(VI)(a) (1982); N.Y.Crim. Proc. Law § 580.20(VI)(a) (1984). The Second Circuit relying on this provision concluded that "in computing whether or not the requirements of Article IV(c) have been satisfied, it is appropriate to exclude all those periods of delay occasioned by the defendant." *United States v. Scheer*, 729 F.2d 164, 168 (2d Cir.1984). The *Scheer* Court found that delays incurred in connection with the defendant's motions to suppress evidence, procure an attorney, obtain a state transcript, or for a continuance to secure testimony from unavailable witnesses were all attributable to the defendant for purposes of tolling the one hundred and twenty day period set forth in the IAD. Similarly, *Foran v. Metz*, 463 F.Supp. 1088 (S.D.N.Y.), *aff'd*, 603 F.2d 212 (2d Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 38 (1979), excluded from the one hundred and twenty day period not only delays connected with motions made by the defendant, but also the time during which a co-defendant's discovery motion was pending, an adjournment granted to the prosecutor based on the unavailability of police witnesses, and even a three week period during which the prosecutor was away on summer vacation. The Court in *Foran* did not even rely on Article VI's tolling provisions for its holding, but instead excluded the time periods in question as "necessary and reasonable continuances granted for good cause shown in open court", as directly provided for in Article IV(c). *Id.* at

1097. *See also People v. Rivera*, 84 A.D.2d 541, 443 N.Y.S.2d 106 (2d dep't 1981). (For purposes of Article IV of the IAD, continuances granted with defendants consent were chargeable against defendant).

Petitioner contends that New York's failure to bring him to trial within Article IV's one hundred and twenty day period violated his speedy trial rights under the IAD. Petitioner was transported from Georgia to New York on or about December 22, 1980 and was not brought to trial until September 15, 1981, two hundred and sixty seven days later. The one hundred and forty seven day delay in excess of the one hundred and twenty day period provided for in Article IV of the IAD, however, can be attributed to adjournments chargeable to petitioner. Judge Thorp of the County Court, Nassau County, New York, in denying petitioner's motion to dismiss the indictment, concluded that from the time James arrived in New York on December 22, 1980 until September 3, 1981, the date the motion to dismiss was made, only twelve days of delay were chargeable to the prosecution. James' trial began twelve days later, thus any delay attributable to the state falls well within the one hundred and twenty day allowance in the IAD. This Court's own review of the state court record indicates that a vast majority of the adjournments were indeed either granted at the petitioner's request, occasioned by petitioner's motions to the court, or due to changes made with respect to counsel representing the petitioner, delays excludable from the one hundred and twenty day period as necessary and reasonable continuances.

## EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that he was denied the effective assistance of trial counsel. Petitioner points to three specific acts to support his claim of ineffective assistance of counsel: (1) Counsel failed to object to the admission of identification testimony given by Beatrice Atkinson and Lisa Bis-

bee; (2) Counsel, at the conclusion of the pre-trial *Wade* hearing, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); withdrew the *Wade* motion made by prior counsel; (3) Counsel entered into a stipulation with the prosecutor, which petitioner claims was detrimental to his defense.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test to be used in adjudicating claims of ineffective assistance of trial counsel. A convicted defendant must show "counsel's performance was deficient" in that it "fell below an objective standard of reasonableness;" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–65. When scrutinizing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065–66 (quoting *Michael v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). As for the prejudice requirement, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

▪ With respect to the admission of identification testimony by Lisa Bisbee and Beatrice Atkinson, as is noted and more fully discussed later in the Court's opinion, the objections raised by petitioner concern issues of credibility, within the purview of the jury, and thus counsel's failure to object to the testimony does not render his representation of petitioner deficient. This same argument holds true with respect to counsel's withdrawal of a *Wade* motion concerning identification testimony.

Furthermore, no prejudice to the petitioner has been shown. The petitioner made a *pro se* application for the exclusion of the identification testimony at issue. After due consideration by the trial court, the motion was denied. In addition, even if counsel had attempted to keep this evidence from being admitted, and assuming he was successful, the State presented several other witnesses, two of whom made in-court indentifications of the petitioner, and introduced physical evidence and other testimony corroborating the State's case. The Court is not persuaded that but for trial counsel's withdrawal of the *Wade* motion, or his failure to object to the identification evidence at trial, the outcome of this case would have been different.

Turning to petitioner's final argument in support of his ineffective assistance of counsel claim, petitioner maintains that a stipulation counsel entered into with the prosecutor, on petitioner's behalf, was so detrimental to petitioner that his right to effective counsel was denied. The facts surrounding the stipulation in question are as follows: Angela Fowler, the victim's girlfriend, who was present during the shooting, made a statement to the police inculpating James as the shooter. In her statement Fowler also indicated that she "identified photo # 8 as the other man who had a gun and shot Clinton Barnes." [Trial 235] The photo Ms. Fowler identified was that of Miles, James' friend, who was also present during the shooting. On cross examination of Fowler, defense counsel attempted to use this statement to show that it was in fact Miles who shot and killed Barnes. When questioned about her statement, Fowler replied, "He [Miles] was the other man that was with the man who shot Clinton Barnes" and "I remember him [Miles] being with Shorty [James]. I remember Shorty [James] shooting Clinton." [Trial 191–192]. After an argument between counsel as to whether the defense attorney's impeachment was proper, Fowler's statement was admitted into evidence without objection from the State. At the close of testimony that day, the prosecutor made a motion to have the statement stricken from evidence. A lengthy, heated

conference was held in chambers, resulting in the stipulation now in dispute being read to the jury as a substitute for Fowler's statement, which was stricken from evidence. The stipulation stated:

That on November 18, 1979, the witness, Angela Fowler, gave a written statement to the police; that statement was offered in evidence by the defendant solely for the purpose of establishing that on an earlier occasion, namely on November 18, 1979, Angela Fowler stated to the police that another man had a gun and was one of the persons who shot Clinton Barnes.

[Trial 245].

■ Petitioner maintains that since the evidence at trial indicated there could only be one shooter, the stipulation entered into was contrary to petitioner's defense that Miles was the person who shot and killed Barnes and thus counsel's willingness to enter into the agreement constitutes ineffective representation. The stipulation, however, does make clear to the jury that Angela Fowler had, on one occasion, identified a person other than Melvin James as having a gun and shooting Clinton Barnes. This fact is quite consistent with petitioner's defense at trial.

Furthermore, it should be stressed that the question before this Court is not whether this stipulation was the most effective trial tool defense counsel could have employed, but rather whether petitioner has overcome the strong presumption that counsel's entrance into this stipulation, in response to the prosecutor's motion to strike Fowler's statement from evidence, falls within a wide range of reasonable professional assistance that might be considered sound strategy. Petitioner has not overcome this presumption. Accordingly, the Court holds that counsel's agreement to the stipulation does not support petitioner's claim of ineffective assistance of counsel.

## SUPPRESSION OF EXCULPATORY EVIDENCE

Petitioner alleges that the State violated his constitutional right to due process un-

der the Fourteenth Amendment by suppressing exculpatory evidence at his grand jury hearing. He further contends that because the evidence was not presented to him until trial, he was insufficiently prepared, thereby violating his right to a fair trial.

■ A prosecutor has a duty to present to a grand jury evidence which clearly negates guilt. *United States v. Olin Corp.,* 465 F.Supp. 1120 (W.D.N.Y.1979); *United States v. Mandel,* 415 F.Supp. 1033 (D.Md. 1976); ABA Standards, *The Prosecution Function,* § 36(b). The evidence, however, must be clearly exculpatory not merely material to the case, *United States ex rel. Meers v. Wilkins,* 326 F.2d 135 (2d Cir. 1964), *Mandel,* 415 F.Supp. at 1041; "otherwise a court runs the risk of interfering too much with the grand jury process and does so largely on the basis of guessing what evidence a grand jury might have found persuasive." *Mandel,* 415 F.Supp. at 1042.

■ Here, the prosecutor did not submit to the grand jury an identification made by Angela Fowler, an eyewitness to the alleged shooting. Fowler had identified Jimmy Valentino Miles from an array of photos as "the other man who had a gun and shot Clinton Barnes." [Trial 192]. This evidence, though material to the case, does not exculpate the petitioner. It merely establishes that Miles was one of the individuals involved in the shooting incident. This conclusion is supported by the witness' testimony at trial, where she explained that Miles had accompanied the man who shot Barnes. Since the evidence the prosecutor failed to present does not clearly negate guilt, petitioner's claim that his constitutional rights were violated is not valid.

■ Additionally, petitioner's allegation that he could not adequately prepare his case because he did not know about the Fowler identification until trial is also without merit. Though the Supreme Court of the United States has held that material evidence favorable to the accused may not

be suppressed, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), there is no requirement that the evidence must be presented prior to trial. *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States ex rel Lucas v. Regan*, 503 F.2d 1 (2d Cir.1974), *cert. denied*, 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1979); *United States v. Tucker*, 495 F.Supp. 607, 610 (E.D.N.Y.1980). The withholding of evidence prior to trial may violate the petitioner's rights only where disclosure for the first time at trial "would be too late to enable the defendant to use it effectively in his own defense." *Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir.1974) (quoting *United States v. Cobb*, 271 F.Supp. 159, 163 (S.D. N.Y.1967)). *See also United States v. Stone*, 471 F.2d 170, 174 (7th Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973).

■ There has been no showing by the petitioner that disclosure was so late as to violate his Due Process rights. At trial, petitioner sought no continuance on the grounds that he needed more time to gather additional information concerning the "surprise" evidence. In fact, petitioner conducted an in-depth cross-examination of Fowler concerning her previous identification. Moreover, Fowler testified at the grand jury hearing that "another guy walked up and assisted Shorty [James]". [Grand Jury 11–12]. Petitioner, the Court believes, had sufficient opportunity to ponder this evidence prior to trial and was therefore not denied his right to a fair trial.

## SUFFICIENCY OF INDICTMENT

■ Petitioner next argues that since he was not charged with possession of a gun as a separate offense, the entire indictment is defective in that such possession is a necessary element of the crimes charged. A federal court is barred from considering on a habeas petition a claim not raised at trial or on direct appeal, in violation of state procedural requirements, without a showing of "cause and prejudice." *Wain-*

*wright v. Sykes*, 433 U.S. 72, 82–90, 97 S.Ct. 2497, 2504–08, 53 L.Ed.2d 594 (1977); *Jackson v. Scully*, 781 F.2d 291 (2d Cir.1986); *Forman v. Smith*, 633 F.2d 634 (2d Cir.), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1980).

James was convicted in State court and appealed his conviction on several grounds. Petitioner, however did not raise his claim that the indictment was defective until he first introduced it in his post-judgment motion to vacate. Petitioner's failure to raise this claim until the post-judgment motion precludes him from obtaining state court review beyond direct appeal of the conviction. N.Y.Crim.Proc.Law § 440.10(2)(c). *See Jackson*, 781 F.2d at 297. Since petitioner has forfeited his claim under state law, he is similarly barred from seeking relief in federal court, "absent a showing of cause for the noncompliance [with state procedural requirements] and some showing of actual prejudice resulting from the alleged constitutional violation." *Forman*, 633 F.2d at 637 (quoting *Wainwright*, 433 U.S. at 84, 97 S.Ct. at 2505).

Petitioner has satisfied neither the cause nor the prejudice requirements of the *Wainwright* test. Absent justifiable circumstances, mere failure to raise an objection is insufficient to constitute cause under *Wainwright*. *Jackson*, 781 F.2d at 297. Petitioner has not shown nor is there any indication in the record, that the circumstances surrounding this case were such that petitioner's noncompliance with state procedural laws was justified.

■ Similarly, petitioner has not shown that his defense was prejudiced by the State's failure to charge him with possession of a weapon as a separate offense. A prosecutor is not required to submit all potential lesser offenses which the evidence might support when he seeks an indictment. *People v. Delaney*, 125 Misc.2d 928, 481 N.Y.S.2d 229 (N.Y.Crim.Ct. 1984). In order to avoid prejudice to the defendant, however, the prosecutor must include in the indictment each and every element of the crime which is charged, *People v. Iannone*, 45 N.Y.2d 589, 412

N.Y.S.2d 110, 384 N.E.2d 656 (1978); *People v. DiNoia*, 105 A.D.2d 799, 481 N.Y. S.2d 738 (2d Dep't 1984), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2033, 85 L.Ed.2d 315 (1985), and in the case of an armed felon, the specific implement involved. N.Y.Crim. Proc.Law § 200.50(7)(b) (1983). Since the indictment under which the petitioner was convicted states each and every element of the crimes charged and in one form or another it states that a gun was used during the commission of the crimes, there was ample notice to enable the petitioner to prepare his defense. Therefore, the Court finds that there was no prejudice to the petitioner for failing to charge him with possession of a handgun.

### IDENTIFICATION TESTIMONY

Petitioner claims that in-court identifications by Beatrice Atkinson, Donna Bisbee, Lisa Bisbee, and Angela Fowler identifying the petitioner as the perpetrator were improperly admitted into evidence. James bases his claim on allegations of improper police procedures and prosecutorial misconduct.

The State, in opposition to petitioner's motion, argues that the motion is procedurally defective as the question of admissibility was not preserved for review under state law. As the Court has already discussed above, failure to bring a claim in state court in violation of state procedural requirements bars a federal habeas court from considering the issue, absent a showing of "cause and prejudice." *Wainwright*, 433 U.S. at 82–90, 97 S.Ct. at 2504–2508. Petitioner did not challenge, either at trial or on direct appeal, the admissibility of Angela Fowler's identification testimony. Petitioner put forth no reason, nor does the Court find justification in the record, for petitioner's failure to make the required objection.

With respect to identification testimony given by Beatrice Atkinson, Donna Bisbee and Lisa Bisbee, however, the Court disagrees with the State's position. A pretrial motion to suppress identification testimony was made by the petitioner's original trial counsel. Although subsequent trial counsel withdrew the motion at the conclusion of a *Wade* hearing, at trial the petitioner made the following *pro se* objection at the conclusion of the State's case:

> I make a motion to dismiss the indictment of the exclusion of certain evidence for the Court to conduct a hearing of prior in-court identification testimony of the witnesses Beatrice Atkinson, Donna Bisbee and Lisa Bisbee because of the fact that these witnesses' in-court identification did not have an independent source or was not shown by the District Attorney to have an independent source....

> At this time, your Honor, the defendant objects to these witnesses' in-court identification testimony and for this testimony to be excluded from evidence because it had been shown that this testimony derived straight out of the District Attorney's Office and there was no independent basis, none shown to the Court. And I move that identification testimony was somewhat unreliable and I ask this Court to order a mistrial and to dismiss the indictment and exclude that testimony from the evidence.

[Trial 335–37].

This *pro se* application was sufficient to preserve for review, on the merits, the question of the admissibility of the identification evidence in controversy.

Upon consideration of the merits, the Court finds that the petitioner's due process rights were not violated by the admission of identification testimony given by Beatrice Atkinson, Lisa Bisbee and Donna Bisbee. Donna and Lisa Bisbee were fourteen and fifteen years of age, respectively, at the time of the shooting. They witnessed the event from a distance of approximately four feet while waiting to be picked up by their mother. Some time after the incident the two girls were shown ten photos. Donna Bisbee identified the petitioner's photo as being that of the man who shot Barnes. Lisa Bisbee, however, was unable to identify petitioner from the

photos. Donna Bisbee subsequently testified at a pre-trial *Wade* hearing but failed to identify petitioner. Both girls made in-court indentifications of the petitioner during the prosecutor's case at trial.

The admission of Lisa Bisbee and Donna Bisbee's in-court identification of the petitioner did not violate petitioner's due process rights. The United States Supreme Court has held:

Convictions based on eyewitnesses identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification.

*Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The procedures used here were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The petitioner relies on case law designed to protect a defendant where a single photo, or the defendant himself, is shown by police to a witness, indicating that the person is a suspect. The witness, eager to cooperate, agrees that this is the perpetrator and consequently adopts that person's appearance as that of the perpetrator, thereby tainting future identifications. Here, however, the Bisbee sisters viewed an array of ten photos nine months prior to their in-court identifications. Lisa Bisbee did not positively identify the petitioner as the assailant from the photos she was shown. Since she was unable to identify the petitioner when presented with the photos, it is not possible that Lisa Bisbee adopted the petitioner's appearance from those photos. Therefore, the out of court identification could not have tainted her in-court identification. *See People v. Chamberlain,* 96 A.D.2d 959, 466 N.Y.S.2d 860 (3d Dep't 1983).

In addition, defense counsel, on cross examination, questioned the girls as to the procedures used during their out of court identifications and highlighted Lisa Bisbee's inability to identify the petitioner upon viewing the photo array and Donna Bisbee's failure to identify petitioner at a pretrial hearing. Furthermore, the girls' ages, the excitement of that evening, and the discussions the girls had with each other as well as with the prosecutor were all brought to the jury's attention on cross examination, where they may appropriately be considered as issues of credibility. *See Simmons,* 390 U.S. at 385, 88 S.Ct. at 971 (cross examination at trial exposes the jury to the risks of error surrounding pretrial photographic identification procedures and thus substantially lessens the danger of convictions based on mis-identification).

The petitioner objects to the admission of Beatrice Atkinson's in-court identification on the ground that Atkinson was shown a single photo of the petitioner just following the shooting. This claim is not supported by the record. The record indicates that shortly after arriving on the crime scene, police seized a photo of the petitioner from his car. The photo was shown to Angela Fowler and Charles Rutledge, both of whom were previously acquainted with petitioner and identified him to police by name before viewing the photo. The purpose of the identification was so the police, concerned with tracking the assailant, who was still at large, would know the exact appearance of the person witnesses referred to as Melvin "Shorty" James. There is nothing in the record that indicates that Beatrice Atkinson, who was not previously acquainted with the petitioner, viewed this photograph or that the police engaged in any other conduct that would taint Atkinson's in-court identification.

## COMPULSORY PROCESS

Petitioner also raises the argument, which he did not put forth in his initial petition to this Court, that he was denied his constitutional right to compulsory process. He alleges that he was unable to secure the testimony of Dorothea Hunter due to delay by the prosecution in bringing his case to trial. Petitioner failed to

 

present this allegation to the state court, either at trial or on direct appeal.

As the Court has already discussed above, failure to bring a claim in state court in violation of state procedural requirements bars a federal habeas court from considering the issue, absent a showing of "cause and prejudice." *Wainwright*, 433 U.S. at 82–90, 97 S.Ct. at 2504–08. Neither cause nor prejudice has been established.

Petitioner has put forth no reason, nor does the Court find justification in the record, for petitioner's failure to follow state procedural requirements. Moreover, petitioner has not established that his defense was prejudiced due to a delay in the trial proceedings. A review of the transcript indicates that petitioner was in contact with Hunter the day before she was scheduled to testify and that her nonappearance was due to her refusal to testify, not, as petitioner claims, because of a delay by the prosecution in bringing this case to trial [Trial 341]. Since the petitioner has failed to satisfy the cause and prejudice requirements of the *Wainwright* test, the Court is barred from considering petitioner's claim that his constitutional right to compulsory process was denied.

### WEIGHT OF THE EVIDENCE

Finally, petitioner claims that the verdict against him must be set aside as against the weight of the evidence. This claim is devoid of merit. The case at trial boiled down to which of two men pulled the trigger. The State presented four eyewitnesses, all of whom identified Melvin James as the shooter, as well as physical evidence corroborating their testimony. It is clearly within the province of the jury to resolve issues of conflicting evidence and credibility. *Young v. Abrams*, 698 F.2d 131 (2d Cir.1983). Here the jury resolved those issues in favor of the prosecution, and the Court must give due deference to the jury's determination.

### CONCLUSION

For the reasons set forth throughout the Court's opinion, petitioner's application for a writ of habeas corpus is denied.

SO ORDERED.