David DIXON, Petitioner,

v.

Carl D. BERRY, Superintendent, and Robert Abrams, Attorney General of the State of New York, Respondents.

No. 86 Civ. 5388.

United States District Court,
S.D. New York.

Sept. 1, 1987.

---

**27.** *Panama Processes, S.A. v. Cities Service Co.,* 500 F.Supp. 787, 800 (S.D.N.Y.1980), *aff'd,* 650 F.2d 408 (2d Cir.1981).

**28.** *Id.,* 500 F.Supp. at 800.

David Dixon, pro se.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y., for respondents; Albert Ceva, Asst. Dist. Atty., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Following the filing by petitioner, pro se, for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, the application was referred by this Court to Magistrate Leonard Bernikow for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).

The petitioner was convicted upon a jury trial in the Supreme Court, Bronx County, of the criminal sale of a controlled substance in the third degree, in violation of New York Penal Law ("NYPL") § 220.-39(1). He was sentenced as a second felony offender to an indeterminate term of imprisonment of from four and one half to nine years. The judgment of conviction was affirmed without opinion by the Appellate Division, First Department. Application for leave to appeal to the Court of Appeals was denied.[1]

Under a so-called "agency defense" doctrine, the New York State Court of Appeals has held that " '[o]ne who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics.' "[2] The petitioner's claim of violation of his federal constitutional rights centers about this doctrine. He contends (1) that his conviction for the sale of a controlled substance deprived him of due process because the State failed to disprove beyond a reasonable doubt that he acted only as a buyer's agent; and (2) that the Trial Court's instructions to the jury on his agency defense and the operative standard of proof were inadequate and deprived him of a fair trial. The Magistrate found that petitioner had presented and exhausted his claims before the State Court and, after an extensive review of the record, recommended dismissal of plaintiff's claims upon the merits, and also recommended that a certificate of probable cause issue with respect to petitioner's claim that a supplemental jury instruction that defined the statutory term "seller" without referring to petitioner's agency defense constituted constitutional error. The petitioner filed exceptions to the recommendation of dismissal of his claims upon the merits, and respondents filed exceptions to the recommendation that a certificate of probable cause issue pursuant to Fed.R.App.P. 22(b).

---

1. *People v. Dixon*, 65 N.Y.2d 979, 494 N.Y.S.2d 1047, 484 N.E.2d 677 (1985).

2. *People v. Lam Lek Chong*, 45 N.Y.2d 64, 73, 407 N.Y.S.2d 674, 679, 379 N.E.2d 200 (citations omitted), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978); *see also People v. Roche*, 45 N.Y.2d 78, 81, 407 N.Y.S.2d 682, 684, 379 N.E.2d 208, *cert. denied*, 439 U.S. 958, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978); *People v. Sierra*, 45 N.Y.2d 56, 60, 407 N.Y.S.2d 669, 672, 379 N.E.2d 196 (1978).

The Court, in order to make its de novo determination of the recommendations of the Magistrate, to which objections have been made, has read the trial transcript and the submissions of the parties. The Court has also carefully considered the extensive report of the Magistrate, which contains factual findings and a detailed discussion of the applicable law. Upon a full consideration of all matters, the Court accepts the recommendation of the Magistrate that petitioner's application be dismissed upon the merits, but does not accept the recommendation that a certificate of probable cause issue.

Petitioner's first claim is that his conviction for the sale of a controlled substance deprived him of due process because the State failed to disprove beyond a reasonable doubt that he acted only as a buyer's agent. The entire trial, from opening statements, testimony of witnesses, summations and instructions centered about the agency defense. The evidence in support of the State's claim came from an undercover officer ("the undercover" or "the agent"), who conducted the transaction with petitioner, and from petitioner, who testified on his own behalf.

In broad outline, the undercover testified that he saw petitioner for the first time shortly before October 15, 1982, when petitioner was speaking with one Dennis Martin (or "Dennis"), from whom the undercover had previously purchased narcotics. Subsequently, on October 15, 1982, while the undercover was pressing the bell of Dennis Martin's apartment, petitioner came out from the entrance, introduced himself by his first name, stated to the undercover that he knew why and for what the undercover was there, and that he could give the undercover a better deal than Dennis Martin; they discussed drugs and petitioner wrote his name and telephone number on an envelope, which was received in evidence. Subsequently, on November 4, 1982, the undercover telephoned petitioner, and told petitioner he was interested in purchasing cocaine, and petitioner asked him to come right over. The undercover received from his office $400 pre-recorded buy money. When the undercover arrived at petitioner's apartment, they discussed the purchase by the undercover of one-eighth of an ounce of cocaine from petitioner at an agreed price of $300. Petitioner then made several telephone calls, asked for the $300, which the undercover gave him, and instructed the undercover to return to the apartment in approximately one hour. The undercover asked petitioner why he didn't have the stuff on hand and petitioner responded he didn't work that way; that from experience the best way to do business was not to keep anything in his apartment. The undercover left the apartment and, as directed by petitioner, returned about one hour later and was granted admittance by petitioner's daughter, who told him to wait; that her father had called and said he would be there shortly; petitioner arrived about ten minutes later. Both went to petitioner's bedroom, where he removed from his coat a clear plastic bag containing some cocaine. Petitioner then took from under his bed "a coke scale" and measured an eighth of an ounce, and after the weighing, rewrapped the substance and handed it to the undercover. The undercover then departed and petitioner was arrested one month later.

Petitioner testified that he first saw the undercover a short time before October 15, 1982, while he was engaged in conversation with his good friend, Dennis Martin, with whom he had been friends over eight years; that the undercover interrupted their conversation and asked to speak privately with Dennis, which they did, but petitioner had no conversation with the undercover on that day.

Petitioner acknowledged that he had previously been convicted of a narcotics offense; that he had a few jobs, as gypsy and medallion cab driver, and also worked in the building industry; and, that the first time he ever saw the undercover was on the occasion above described. Several weeks later, as petitioner was leaving an apartment building after having tried to visit Dennis, who was not at home, petitioner ran into the undercover in the vestibule. Petitioner did not recognize him, whereupon the undercover reminded him they had

seen one another on the earlier occasion; the undercover then asked petitioner isn't "he (Dennis) a good friend of yours?", to which petitioner responded they had been friends for a long time, whereupon the undercover told him that Dennis had been involved in a large cocaine transaction with some friends who were not satisfied with the deal and had lost large profits, and that Dennis was in serious trouble and faced risk of serious injury; then the undercover asked could he discuss the matter further with petitioner, requested petitioner's telephone number, and was given his home telephone number. Before leaving, the undercover again referred to the fact that Dennis was in serious trouble. About a week or two later, the undercover telephoned petitioner at his home and asked him whether he wanted to do something to help his friend Dennis, who was in a jam because the quality he sold to the undercover's friends was not good and they could not realize the amount of money they were supposed to make. During the telephone conversation, the undercover asked if petitioner could he get him a "half," and petitioner said to the undercover whatever he was talking about could wait until he got to petitioner's home. Petitioner volunteered, at trial, that, although he had not seen Dennis from about October 15 to the time of the telephone conversation on November 4, Dennis had been beaten and assaulted, and that petitioner thought the undercover and his friends were involved in the assault; that they were still after Dennis and he "felt fearful for his [Dennis'] life." Petitioner also testified that, soon thereafter, the undercover arrived at his home and asked him could he get an eighth of cocaine and petitioner said he would try; that he made six or seven phone calls, following which he told the undercover he could get it for $300 if the undercover wanted to pay that sum; that the undercover agreed and gave him $300; and that the undercover told petitioner they would meet back at the apartment in about an hour. Petitioner then left his apartment, met with the supplier, gave him the $300 petitioner had received from the agent, and received from the supplier what petitioner believed was an eighth of an ounce of cocaine. He then telephoned his home and asked his daughter "did my friend come back" and she informed him "he [the undercover] was there."

Upon his return to the apartment, he handed the package to the undercover, who seemed unsatisfied, whereupon petitioner took a scale his son used in connection with his chemistry studies, weighed the cocaine in the presence of the undercover, who told him to wrap it up, which he did, and the undercover said he was satisfied, and petitioner said he did it to help out his friend, and the agent responded he would have no problem, and that he would be in touch with petitioner again because he might want him to do something else. Petitioner replied he would not be interested in further dealings; that he did what he did only "to help my friend", and felt it might "save Dennis's life." Thereupon the undercover left the apartment with the cocaine.

Essentially, upon the substance of the foregoing testimony, petitioner contended that he was not a seller but had made the purchase on behalf of the undercover solely to protect his friend Dennis from threatened injury. Petitioner further testified that about a week later the undercover called upon him again and sought to have him engage in another narcotics transaction, but he declined. Obviously, petitioner's version and that of the undercover were in sharp conflict.

█ Petitioner's first claim to void the judgment of conviction is that he was deprived of due process of law under the Fourteenth Amendment because the prosecution had failed to carry its burden of proof beyond a reasonable doubt that petitioner had not acted solely as the agent of the buyer, the undercover. To advance that contention in the light of the conflicting evidence on the subject is sheer rhetoric. The versions of petitioner and the undercover were irreconcilable and presented an issue of credibility to be resolved by the jury. To one who has read the trial record, petitioner's version appears incredible—indeed, petitioner himself, as he was about to relate events, stated to the jury

his version "might sound a little far-fetched." However one may view his testimony, the fact is that it differed from that of the undercover, and the jury, by its verdict, accepted that of the latter. The issue of agency was dominant from the very start of the trial to its conclusion. The Court extensively instructed the jury on the subject. Significantly, no exception was taken to the charge. Despite the failure to except, petitioner attacks the instructions to the jury. The charge was entirely correct under New York law. Moreover, any challenge is barred on procedural grounds absent a showing of cause and prejudice, and none has been presented.[3] In sum, there was substantial evidence upon which the jury, as a rational fact finder could determine that the State had established each essential element of the crime charged beyond a reasonable doubt, including its burden of proof on the agency issue.[4]

■ The petitioner's next claim of constitutional error is based upon the Trial Judge's instruction in response to the jury's request for the "definition of seller." The judge indicated to counsel that, in response, she intended to read the statutory definition as set in New York State's Penal Law. Defense counsel requested that the Court, in addition, further instruct the jury that to find the defendant guilty of being a seller, the State would have to prove beyond a reasonable doubt the elements that make a seller under the law. The Court declined, pointing out that the jury's request was for the definition of "seller." It is not uncommon for lawyers, when jurors make requests for further instructions, to urge matters in addition that emphasize their positions but go beyond the jury's specific request. The defense theory and the agency concept had been fully set forth in the Court's charge to the jury, and there was no need to elaborate beyond the specific request of the jury and to reiterate the

positions of either the defense or the prosecution. The claim that the refusal to supplement that charge constituted federal constitutional error because of the refusal to amplify the additional instruction is without substance.

However, the Magistrate, on this issue, was of the view that since the Court in its main charge had not given the statutory definition of "seller," that to limit the supplemental instruction to the statutory definition, without the addition requested by counsel, may have given the jury a means of deciding the main issue—that is the agency defense—by the very language of the statute. Thus the Magistrate, in his report, states:

> we cannot say beyond a reasonable doubt that the erroneous instruction did not lead the jury to ignore its doubts about the evidence, and replace those doubts with the easy formula the statutory definition provided; if petitioner had performed any of the acts described in the definition, as he conceded he did, the evidence must show he was a seller and not a buyer's agent. By this reckoning, the State was relieved by that instruction of the burden of disproving petitioner's agency defense beyond a reasonable doubt, and as such would represent constitutional error.

Despite this reference to "constitutional error," the Magistrate continued that "absent some authority for holding that a statutory recitation can serve the same impermissible ends as a *Sandstrom* presumption charge[5] we are reluctant to hold this instruction amounted to constitutional error," and accordingly rejected petitioner's claim. However, the Magistrate was of the view that the issue was close and recommended that petitioner be issued a writ of probable cause.[6] This Court does not accept this recommendation based upon the Magistrate's view that the statutory definition may have led the jury "to ignore its

---

**3.** *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Rodriguez v. Scully,* 788 F.2d 62, 63 (2d Cir.1986); *Jackson v. Scully,* 781 F.2d 291, 297 (2d Cir.1986).

**4.** *Cf. Jackson v. Virginia,* 443 U.S. 307, 320–26, 99 S.Ct. 2781, 2789–93, 61 L.Ed.2d 560 (1979).

**5.** *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

**6.** Fed.R.App.P. 22(b).

doubts about the evidence, and to replace those doubts with the easy formula the statutory definition provided." There is nothing in the record that affords any basis for a reference to the "jury's doubts" about the evidence. The request for a definition of seller in no respect reflects any doubt by any juror as to the factual matters tendered on the disputed issue of whether petitioner was a seller or acting on behalf of the undercover. The case was riven with the agency issue from the very opening to the conclusion of the trial. To suggest that under such circumstances the jurors would disregard the evidence of each side because only the statutory definition was given to the jury without the requested supplemental instruction is unrealistic and without support. Moreover, even assuming that the omission may be deemed constitutional error, this Court's reading and study of the record justifies a finding that beyond a reasonable doubt it was harmless,[7] and there is no reason to issue a certificate of probable cause.

Accordingly, the petition is dismissed upon the merits and a certificate of probable cause is denied.

So ordered.

---

**7.** *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1966).